[Civ. No. 46692. First Dist., Div. One. Dec. 30, 1982.]

ELISE GUNN, Plaintiff and Appellant, v.
UNITED AIR LINES, INC., et al., Defendants and Respondents.

**COUNSEL**

Robert E. Stanton for Plaintiff and Appellant.

John A. Waner and Foster, Waner, Monroe, Thurrell, Johnston & Flitner for Defendants and Respondents.

**OPINION**

**RACANELLI, P. J.**—In this appeal we must decide whether decedent's surviving spouse is entitled to share in the proceeds of decedent's retirement fund with the designated beneficiaries, decedent's children of a former marriage.

The facts are undisputed. In June 1971, decedent, Norman Gunn, a commercial pilot for United Airlines, was divorced from his former wife, Margaret. Under the terms of their property settlement agreement, Norman was awarded his vested interest in the United Airlines retirement fund subject to a proviso that he designate their four sons as beneficiaries of the fund in the event of his death.[1] Norman thereafter complied with the terms of the provision.

Eleven days after the divorce became final, Norman married appellant (Elise). On June 9, 1977, Norman died. During his marriage to Elise, Norman's retirement fund increased in value to $84,465.

Following United Airlines' refusal to pay her any portion of Norman's retirement fund, Elise brought the present action for declaratory relief. At trial, Elise testified that though she was aware of the agreed designation of Norman's sons as such beneficiaries, Norman told her the purpose of the designation was to

---

[1]The pertinent language of the agreement reads as follows: "All of the following described property is hereby recognized as, and by virtue of this agreement shall forthwith be and become the sole and separate property of Husband . . .:

"H. United Airlines Retirement Fund having a present, vested worth as of December 31, 1969 of Twenty-Six Thousand Four Hundred Thirty-Five and 03/100 Dollars ($26,435.03); provided, however, that Husband will immediately designate his four sons, or the survivor of them, irrevocably, as beneficiaries of the Fund in the event of his death."

assure his sons' college education; further, that shortly before his death, Norman expressed a desire, in view of the sons' attainment of majority, to change the beneficiary designation so that Elise would be "taken care of."

The trial court found that Elise had no right to share in the pension benefits and that the entire proceeds should be paid to Norman's sons, the individually named respondents herein. This appeal ensued.

### DISCUSSION

Elise concedes that Norman's four sons are entitled under the property settlement agreement to at least $50,670, the value of the retirement fund on the date of Norman's marriage to Elise. (See *Reliance Life Ins. Co.* v. *Jaffe* (1953) 121 Cal.App.2d 241 [263 P.2d 82]; *Mutual Life Ins. Co.* v. *Henes* (1935) 8 Cal.App.2d 306 [47 P.2d 513].) The mere fact that the children have become emancipated does not affect their beneficial interest in the fund. (See *Wright* v. *Wright* (1969) 276 Cal.App.2d 56 [80 Cal.Rptr. 741]; *Waxman* v. *Citizens Nat. Trust & Sav. Bk.* (1954) 123 Cal.App.2d 145 [266 P.2d 48].)

The sole question presented is whether Elise is entitled to share in the increased value of the fund as community property which accrued during their marriage.[2] Relying on the established principle that where a married man designates someone other than his wife as the named beneficiary of insurance or pension benefits, "to the extent the premiums were paid with community funds or the benefits were earned by the husband from his employer during the marriage, on his death the wife is entitled to set aside the gift made to the named beneficiary without consideration and without her consent, to the extent of one-half of the community property interest. (*Tyre* v. *Aetna Life Ins. Co.*, 54 Cal.2d 399, 404 [6 Cal.Rptr. 13, 353 P.2d 725]; *Sieroty* v. *Silver*, 58 Cal.2d 799, 803 [26 Cal.Rptr. 635, 376 P.2d 563]; *Polk* v. *Polk*, 228 Cal.App.2d 763, 781-782 [39 Cal.Rptr. 824]; see *Benson* v. *City of Los Angeles*, 60 Cal.2d 355, 359 [33 Cal.Rptr. 257, 384 P.2d 649].)" (*Patillo* v. *Norris* (1976) 65 Cal.App.3d 209, 217 [135 Cal.Rptr. 210].) Accordingly, it becomes the duty of the trial court to make an allocation of the proceeds attributable to community and separate property. (*Polk* v. *Polk, supra*, pp. 782-785.)

That rule has no application to the present case. As a general proposition, community property is liable for satisfaction of the husband's debts, including his obligations arising from a former marriage. (*Weinberg* v. *Weinberg* (1967)

---

[2]Elise contends that to award respondent sons the full $84,465 would render the division of community property between Norman and Margaret unequal. (See Civ. Code, § 4800.)

The contention is without merit. First, Elise has no standing to render what is essentially a collateral attack on the division of property under the property settlement agreement.

Moreover, the mandate of an equal division of property is subject to the statutory exception where the parties agree or stipulate otherwise. (See Civ. Code, § 4800, subd. (a).)

67 Cal.2d 557, 562 [63 Cal.Rptr. 13, 432 P.2d 709]; *In re Marriage of Smaltz* (1978) 82 Cal.App.3d 568, 570 [147 Cal.Rptr. 154].) The limitation imposed on the husband is to refrain from making a nonconsensual gift of community property without consideration. But he is not restricted from using community property to satisfy his preexisting debts and obligations. (See *Grolemund* v. *Cafferata* (1941) 17 Cal.2d 679, 683-684 [111 P.2d 641], cert. den., 314 U.S. 612 [86 L.Ed. 492, 62 S.Ct. 87].)

The present circumstances are virtually identical to those involved in *Burgart* v. *Burgart* (1970) 5 Cal.App.3d 409 [85 Cal.Rptr. 122], in which a similar claim for apportionment was made and rejected. There, the husband and his first wife entered into a property settlement agreement at the time of their divorce whereby husband agreed to maintain two insurance policies naming his wife as beneficiary. The policies were provided by husband's employer: one was a term life insurance policy with coverage which varied with the amount of husband's salary; the second was an annuity plan which paid benefits equal to the amount of the employee's contributions plus interest. Husband thereafter remarried and redesignated his new wife as beneficiary. The court held the second wife was entitled to no share of the insurance proceeds, even though (1) the term life insurance coverage had increased from $15,000 at the time of the divorce to $30,000 at the time of husband's death on account of husband's salary increases; and (2) the annuity plan contributions had increased from $1,939 at the time of the divorce to $4,378 at the time of his death. The language of the court is apposite, and equally persuasive, herein: "Because the premiums on the two policies were paid from the community property she shared with Mr. Burgart, Bernice theorizes the payments constituted gifts of the community which could not be made without her written consent (Civ. Code, § 172). The fallacy of Bernice's argument is payment of her husband's obligations to his first wife did not constitute a gift of moneys. The community property was subject to the pre-existing debts of the husband, including obligations owed the first wife. (*Weinberg* v. *Weinberg,* 67 Cal.2d 557, 562 [63 Cal.Rptr. 13, 432 P.2d 709].) Elizabeth gave consideration under the property settlement agreement to Mr. Burgart's promise to maintain the insurance policies. To sustain Bernice's contention would be to allow a divorced husband to halve his contractual or judgment-imposed continuing obligations to his ex-wife by the simple expedient of remarriage. The second wife could then recapture her share of 'gifts' made out of the community to pay support or other obligations to the first wife.

"Because the community property of Burgart's second marriage was subject to payment of his contractual obligation to maintain the insurance policies, payment of the premiums out of the community did not constitute payment of consideration for the policies by Bernice so as to entitle her to share in the policies.

The consideration for the payments moved from Elizabeth through the property settlement agreement." (*Id.*, pp. 412-413.)

Similarly, the community property of Norman and Elise was subject to Norman's contractual obligations under the property settlement agreement with his former wife, Margaret. Norman's contributions to the retirement fund, albeit derived from the community, were not a gift but a satisfaction of his preexisting obligations. Consequently, Elise is not entitled to share in any part of the fund.[3]

The judgment is affirmed.

Elkington, J., and Newsom, J., concurred.

---

[3]Elise further contends the property settlement agreement is ambiguous insofar as it designates the children as beneficiaries of "the Fund." Elise contends the language may be interpreted to mean either the entire value of the fund *or,* as she claims, the 1969 value specified in the property settlement agreement—i.e., $26,435. (See fn. 1, *ante.*)

This contention is inconsistent with Elise's acknowledgment that the children are entitled to the increased value up until the date of Norman's marriage to Elise. At no time did Elise assert below that the children are entitled only to the value as of December 30, 1969. In any event, the property settlement agreement uses the descriptive term "Fund," which suggests that the fund's entire proceeds are to go to the children and not just the 1969 amount mentioned in the agreement.