[No. S013741. Dec. 17, 1990.]

In re the Marriage of ANGELA and RONALD LIPPEL.
RONALD LIPPEL, Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO, Respondent.

**COUNSEL**

Stotter, Samuels & Chamberlin, Kevin L. Starrett, Richmond & Chamberlin, C. Rick Chamberlin, Kate Rockas, De Goff & Sherman and Richard Sherman for Appellant.

John K. Van de Kamp, Attorney General, Steve White and Richard B. Iglehart, Chief Assistant Attorneys General, John H. Sugiyama, Assistant Attorney General, Morris Beatus, Josanna Berkow and Christopher J.Wei, Deputy Attorneys General, for Respondent.

Gerald F. Sevier, District Attorney (Tulare), and John S. Higgins, Jr., as Amici Curiae on behalf of Respondent.

**OPINION**

**PANELLI, J.**—In this action we are asked to decide whether it is a denial of due process, as embodied in Code of Civil Procedure section 580 (section 580), to enter a default judgment ordering a husband to pay child support, where the wife's petition for marital dissolution, which was served on the husband, did not request child support and no notice of any such request was ever served on the husband. For the reasons that follow, we conclude that such a default judgment is void for lack of notice and therefore subject to collateral attack by the husband.

I.

FACTS AND PROCEEDINGS BELOW

In March 1971 Ronald Lippel's wife, Angela Lippel (Angela), filed a petition for dissolution of their marriage of 11½ months, requesting custody of their infant daughter, Kristin. Angela initiated the action by filing a standard printed form petition, which was statutorily authorized, that provided blank spaces for the entry of certain statistical information and contained boxes to be checked to indicate what relief was being requested by the petitioner. (Civ. Code, § 4503.)

Angela checked the boxes that indicated there was no property to be divided and that she was not requesting spousal support. She also checked the box that indicated she was requesting child custody. The form petition also provided a box relating to the issue of child support, which stated: "Petitioner requests that: . . . (c) Support of children be awarded if need is found." This box was left *blank*. Both Angela and her attorney signed the petition.

Ronald Lippel (Ronald) was served with a summons and copy of the petition and did not file a response. Accordingly, in April 1971 his default was duly entered. (Civ. Code, § 4511.) At a default hearing in May 1971, an

interlocutory judgment of dissolution of marriage was entered, awarding Angela custody of Kristin and reasonable visitation rights to Ronald. Despite the fact that Angela had not requested such relief in her petition, the court made an order that Ronald was to pay $100 per month in child support. A notice of entry of that judgment, which merely indicated the book and page where the judgment was entered, was served on Ronald, by mail, on May 27, 1971. (Civ. Code, § 4512.) A similar notice of entry of the final judgment was served upon him on October 12, 1971. (Civ. Code, § 4514.) Ronald was never served with a copy of the judgment itself, nor did he ever receive a copy of the judgment.

During the next 16 years Ronald maintained a close relationship with his daughter through regular visits during holidays and summer vacations. Ronald bought her clothes, school supplies, and miscellaneous personal items, including a bedroom set and a stereo. He also paid for her dance classes and other extracurricular activities. Furthermore, for various periods during these 16 years, Ronald assumed, at Angela's request, custody of and total responsibility for Kristin. According to Ronald, moreover, Angela, with Kristin, participated in some holiday and other family gatherings of Ronald's family.

Angela never mentioned the support order to Ronald, and Ronald was unaware of the order's existence until the City and County of San Francisco (CCSF), which had been paying Aid to Families with Dependent Children (AFDC) to Kristin, commenced proceedings for assignment of his wages, pursuant to Civil Code section 4701.

After more than 16½ years from the date of the interlocutory judgment, in December 1987, CCSF filed a declaration requesting an assignment of Ronald's wages, alleging that he owed unpaid child support. The trial court found that Ronald owed $18,200 to the county for reimbursement of AFDC funds paid to support Kristin. The court ordered a deduction from Ronald's wages in the amount of $300 per month until the total amount was paid. CCSF then recorded an abstract of support judgment with the county recorder and served it upon Ronald by mail.

As a result of this action by CCSF, Ronald moved to vacate the child support provision of the interlocutory judgment and to vacate the order assigning his wages. He argued that the underlying support order was void because it gave Angela relief she had not requested, and of which he had no notice before he allowed his default to be entered. He argued that the

judgment violated section 580[1] and, therefore, could be collaterally attacked at any time. He also argued that the judgment denied him due process, in that, since he had never received notice of a request for child support, he was denied an opportunity to oppose the child support order itself and/or the amount of support ordered.

In opposition to Ronald's motion, CCSF filed a declaration of Lynn Fitzer (Fitzer), the assistant district attorney assigned to the case. Fitzer, on information and belief, stated that Kristin had been a recipient of AFDC since 1971 and that Ronald was aware of this fact.[2] She further stated that Angela had assigned her rights to CCSF and thus could not enforce the support order herself. Fitzer alleged that unsuccessful efforts had been made to locate Ronald and serve him with documents seeking to enforce his support obligations ever since the matter had been referred to the district attorney's office by DSS in early 1980. She also stated that when Kristin stopped receiving AFDC in 1985, Angela requested that the district attorney enforce the child support order as a nonwelfare matter. However, because the district attorney was unable to locate Ronald, the case was placed in closed files pending new information as to his whereabouts.

In July 1988 the trial court entered its order denying Ronald's motion to vacate the child support order and the order assigning his wages. The Court of Appeal, in a published opinion, reluctantly affirmed, stating: "We affirm the order under compulsion of existing California Supreme Court authority." For the reasons that follow, we reverse.

## II.

### DISCUSSION

The issue we address is whether due process and section 580 permit a court to order child support in a default case where, as here, the plaintiff has not requested support in the petition for dissolution of marriage, and consequently, the defendant has not received notice that it may be awarded.

---

[1] Section 580 provides in full as follows: "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case, the court may grant him any relief consistent with the case made by the complaint and embraced within the issue.

[2] However, the legal argument accompanying the declaration stated that Kristin had only received AFDC since 1979. This may be more accurate since the Department of Social Services (DSS) did not refer the matter to the district attorney's office until 1980. It is doubtful DSS would wait nine years before seeking reimbursement for the payments made on Kristin's behalf.

## A.

■ It is a fundamental concept of due process that a judgment against a defendant cannot be entered unless he was given proper notice and an opportunity to defend. (U.S. Const., art. XIV; *Mullane* v. *Central Hanover Bank* (1950) 339 U.S. 306, 313-315 [94 L.Ed. 865, 872-874, 70 S.Ct. 652].) California satisfies these due process requirements in default cases through section 580.

Section 580 provides in part that "[t]he relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint." The "primary purpose of the section is to guarantee defaulting parties adequate notice of the maximum judgment that may be assessed against them." (*Greenup* v. *Rodman* (1986) 42 Cal.3d 822, 826 [231 Cal.Rptr. 220, 726 P.2d 1295]; see also *Becker* v. *S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 494 [165 Cal.Rptr. 825, 612 P.2d 915].)

It is fundamental to the concept of due process that a defendant be given notice of the existence of a lawsuit and notice of the specific relief which is sought in the complaint served upon him. The logic underlying this principle is simple: a defendant who has been served with a lawsuit has the right, in view of the relief which the complainant is seeking from him, to decide not to appear and defend. However, a defendant is not in a position to make such a decision if he or she has not been given full notice. The instant case is a prime example of the foregoing; the petition which was served on Ronald sought no monetary relief from him. Therefore, there was no incentive for Ronald to appear and defend.

We have long interpreted section 580 in accordance with its plain language. Section 580, we have repeatedly stated, means what it says and says what it means: that a plaintiff cannot be granted more relief than is asked for in the complaint. (See, e.g., *Burtnett* v. *King* (1949) 33 Cal.2d 805, 807 [205 P.2d 657, 12 A.L.R.2d 333]; *Becker* v. *S.P.V. Construction Co., supra,* 27 Cal.3d at p. 494 [complaint for breach of contract, fraud and negligent misrepresentation]; *Greenup* v. *Rodman, supra,* 42 Cal.3d at p.824.)

For example, in *Burtnett* v. *King, supra,* 33 Cal.2d 805, the wife filed an action for divorce. The prayer requested an order restraining the husband from being "upon or at the home." The wife, however, did *not* request that the home be awarded to her. The husband allowed a default judgment to be entered against him. The subsequent judgment awarded the home to the wife, who then sold it to a third party. The husband sued to quiet title, lost, and then appealed.

We held the language of section 580 to be mandatory, stating, "[T]he court's jurisdiction to render default judgments can be *exercised only in the way authorized by statute*." (*Burtnett* v. *King, supra*, 33 Cal.2d at p. 807 [italics in original].) Furthermore, we observed that "[c]ertainly no statutory method of procedure or limitation on power could be more clearly expressed than that set forth in section 580 of the Code of Civil Procedure . . . ." (*Ibid.*) We went on to say that, "by reason of his wife's silence on the subject in her prayer, [defendant] would properly assume that the rights to the property were not to be litigated in that action. To hold otherwise would mean that [we] sanction[] a procedure under which a defendant may be *trapped* by a default judgment." (*Id.* at p. 811 [italics in original].) We thereupon reversed the judgment of the superior court. (*Ibid.*)

In *Greenup* v. *Rodman, supra*, 42 Cal.3d 822, the plaintiff in a fraud action sought $100,000 in damages. As a sanction for the wilful and deliberate refusal by the defendant to obey discovery orders, the court struck defendant's answer and the matter continued as a default proceeding. The court thereafter entered judgment in the amount of $676,000. (*Id.* at p. 826.) The Court of Appeal affirmed. We reversed, proclaiming that "in *all* default judgments the demand sets a ceiling on recovery." (*Id.* at p. 824 [italics added].)

■ In short, our previous pronouncements establish that section 580 is to be interpreted, in accordance with its plain language, to deprive a trial court of jurisdiction to enter a judgment against a defaulting defendant which awards greater relief than that sought in the plaintiff's complaint. (*In re Marriage of Wells* (1988) 206 Cal.App.3d 1434, 1437 [254 Cal.Rptr. 185] [§ 580 forbids award of spousal support not requested].)

■ When we apply this established interpretation of section 580 to the facts in the present case, we find that Ronald's right to notice and an opportunity to be heard, embodied in section 580, was clearly violated by the judgment ordering child support. Angela's petition simply did not request child support. In reliance on this petition, Ronald allowed a default judgment to be entered against him. This award, as we have seen, violated the plain language of section 580. To hold otherwise would be to deprive Ronald of his statutory and constitutional right to notice of the claims to be litigated against him.

The Court of Appeal found the foregoing analysis to have "logical appeal," but felt the issue was foreclosed by virtue of previous decisions of this court which had made an exception to the general rule in cases of alimony or child support. We now address the continued vitality of these decisions.

## B.

The Court of Appeal relied, as does CCSF, upon an old line of cases from this court that appears to support an exception to the plain language and general rule of section 580. (See, e.g., *Bowman* v. *Bowman* (1947) 29 Cal.2d 808 [178 P.2d 751, 170 A.L.R. 246]; *Miller* v. *Superior Ct.* (1937) 9 Cal.2d 733 [72 P.2d 868]; *Karlslyst* v. *Frazier* (1931) 213 Cal. 377 [2 P.2d 362]; *Parker* v. *Parker* (1928) 203 Cal. 787 [266 P. 283]; *Cohen* v. *Cohen* (1906) 150 Cal. 99 [88 P. 267] (hereafter *Cohen*).)

As previously noted, the Court of Appeal stated that "[w]hile the wisdom of the continued adherence to the authority of the *Cohen* line of cases may be questioned, any change in this area of the law must come from our Supreme Court, not from this intermediate appellate court . . . . As an inferior tribunal, we are required to follow the decisions of the Supreme Court. (*Auto Equity Sales* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)" We shall conclude that adherence to this line of cases is no longer warranted.

The putative exception to section 580 was first advanced in *Cohen, supra,* 150 Cal. 99. In *Cohen,* the wife's complaint requested a divorce on the ground of extreme cruelty, but made no request for alimony. We held that, even though section 580 stated that relief may not exceed what is demanded in the complaint, "[it] does not make the judgment void in a case where the relief given is *within the terms of a prayer for general relief* and is germane to the cause of action stated, although it may not be authorized by the facts alleged. In such cases the judgment may be erroneous as to the excess and subject to reversal or modification on appeal, but it is not void, nor subject to collateral attack on that ground." (*Cohen, supra,* 150 Cal. at p. 102 [italics added].)

Subsequently, in other divorce cases in which child support or alimony was not demanded in the complaint, but a court had nonetheless ordered it, we similarly reasoned that in the case of support and alimony a prayer seeking general relief was sufficient to put a defendant on notice to anticipate the possibility that such an award will be made, even though not requested. (See *Bowman* v. *Bowman, supra,* 29 Cal.2d at p. 812; *Miller* v. *Superior Court, supra,* 9 Cal.2d at p. 740; *Karlslyst* v. *Frazier, supra,* 213 Cal. at p. 381; *Parker* v. *Parker, supra,* 203 Cal. at pp. 792-793.) We held in these cases that the judgments awarding support were subject to attack on direct appeal as erroneous judgments, but were not void and thus were not subject to collateral attack.

As noted earlier in this opinion, in *Burtnett* v. *King, supra,* 33 Cal.2d 805, we permitted a collateral attack on a default judgment in an action for

divorce where the relief ordered, in that case an award of community real property, had not been requested in the complaint for divorce. This court in *Burtnett* acknowledged the *Cohen* line of cases but dismissed them as "not in point for the reason that there, support money or alimony was involved . . . ." (*Burtnett* v. *King, supra,* 33 Cal.2d at pp. 809-810.) In its opinion in this case, the Court of Appeal accurately pointed out that the *Cohen* support exception (*supra,* 150 Cal. 99) created an inconsistency in the law which has been criticized. (See *Burtnett* v. *King, supra,* 33 Cal.2d 805, 813 [dis. opn. of Edmonds, J.]; Note, *Default Judgments in Excess of Prayer* (1952) 4 Stan.L.Rev. 278, 280; Note (1950) 38 Cal.L.Rev. 313, 316; Note (1949) 23 So.Cal.L.Rev. 124, 125.)

The *Cohen* exception was premised on the notion that a prayer in the complaint seeking general relief, where support was concerned, necessarily placed a defendant on notice that he could be ordered to pay support. However one might view the historical correctness of that conclusion, we believe its continued validity can no longer be supported in view of the passage in 1970 of The Family Law Act (Civ. Code, § 4000 et seq.).

The enactment of The Family Law Act (Act) dramatically and drastically changed the whole landscape of family law. The Act recognized and emphasized the reciprocal rights and obligations of support that a husband and wife have to each other and to their children. Moreover, one of the most significant changes brought about by the Act was the enactment of new rules and forms of pleading in actions to terminate a marriage. The Act abolished the traditional complaint, which often contained the standard prayer for general relief that we found in *Cohen* (*supra,* 150 Cal. 99) to be sufficient notice of a possible support award. The Act empowered and directed the Judicial Council to create, as a substitute for the traditional complaint, a mandatory printed standard form petition. (Civ. Code, § 4503.)

Thus, in 1970, the Judicial Council promulgated rule 1281 of the California Rules of Court, which established a mandatory standard form dissolution petition. This standard form petition, which, with minor modifications over the years, remains in use today, requires a petitioner to set forth certain statistical information in spaces provided, and to check boxes, from a series provided, which indicate the remedy or relief requested (e.g., legal separation, dissolution, or nullity of the marriage) and the specific relief being sought (e.g., property division, spousal support, child custody, child support or attorney fees).

Coupled with the requirement that the respondent be served with a copy of the petition (Civ. Code, § 4503), the manner in which these boxes are

checked, or not checked, informs and puts the respondent on notice of what specific relief the petitioner is, or is not, seeking.

The list of boxes to check for specific relief is followed, in the same paragraph, by language that requests the court to "render such judgments and make such injunctive or other orders as are appropriate." (See appen. A [1971 form petition for dissolution].) We think it plain, in view of the design of the form placing this language immediately following the requests for relief on specific issues, that the language cannot serve as a prayer for relief on any specific issue for which a box exists. Rather, the language serves as a prayer for the court to grant the requested relief by whatever judgment or form of order it deems appropriate.

That this is a reasonable reading of the language is apparent from reading the revised, current form petition, wherein the phrase in question has been moved up, so that it follows the section specifying the remedy or type of termination of marriage that is requested and comes before the section specifying the specific relief requested. Thus placed, the prayer requests the court to "grant the . . . judgment specified [above, i.e., dissolution, etc.], *make injunctive and other orders as may be proper*, and [grant the relief specified below, i.e., that indicated by a check box]." (Italics added; see appen. B [1990 form petition for dissolution].)

We therefore conclude the phrase relates to the form of remedy or judgment, not to additional relief as to issues for which a specific box already exists. To hold otherwise would render a petitioner's decision whether to check or not to check a particular box to no effect. For example, the Judicial Council could not have intended to permit a party to leave the box requesting attorney fees and costs blank and then be able to obtain an order for attorney fees under the general request for "other orders." Such a result would put the respondent at risk and would subvert the purpose of section 580 to assure a defaulting party of the maximum judgment that will be entered against him or her.

In the instant case, it is clear that Angela and her lawyer carefully completed the form petition. Angela requested child custody by checking the box so designated. She specifically denied seeking spousal support by checking the box so designated. She did *not* check the box requesting child support. Ronald was, therefore, never put on notice that child support would be placed in issue in the dissolution proceeding, since a copy of the petition served on him did not raise child support as an issue.

Accordingly, in light of the pleading requirements for a dissolution action under the Act, which were enacted after we decided *Cohen* (*supra,* 150 Cal.

99) and its progeny, we decline to perpetuate an exception to section 580 in dissolution cases based on the idea that a prayer for general relief in such cases supports an award of support. For the foregoing reasons, we determine that the *Cohen* line of cases is no longer persuasive insofar as it stands for the proposition that section 580 permits a court, when entering a default judgment in a proceeding, to award child support not requested in the petition.

## C.

 CCSF contends the support order is valid by virtue of Civil Code section 4700, which empowers a court to order parents to pay child support in "any proceeding where there is at issue the support of a minor child."[3]

As a general proposition we agree that a court, if proper notice has been given, may order the payment of child support. Without question the state has a duty and responsibility to protect the rights of children affected by the decisions of its courts, but it cannot do so at the expense of a person's fundamental and constitutional right to notice.

Under Civil Code section 4700, a court *may* order child support. However, there is nothing in section 4700 to indicate that the statute was intended to permit trial courts to dispense with otherwise applicable notice requirements. In sum, although section 4700 gives the trial court power to make a child support order, adequate notice must nevertheless be given.

At oral argument, CCSF argued for the first time that the summons sent to the father provided notice that the court could award child support. CCSF argued that in the "totality of the circumstances," this summons provided adequate notice to the father. We disagree. The summons stated that, "If [respondent] fail[s] to file a written response . . . , [respondent's] default may be entered and the court may enter a judgment containing injunctive or other orders concerning division of property, spousal support, child custody, *child support*, attorneys' fees, and such other relief as *may* be granted by the court." (Italics added.) Like Civil Code section 4700, the summons simply states that the court has the power to award, among other things, child support. The summons, standing alone, did not, however, provide adequate and sufficient notice to the respondent father in this case

---

[3] Civil Code section 4700, in relevant part, states: "In any proceeding where there is at issue the support of a minor child or a child for whom support is authorized under Section 206, the court may order either or both parents to pay any amount necessary for the support, maintenance, and education of the child. At the request of either party, the court shall make appropriate findings with respect to the circumstances on which the order for the support of a minor child is based."

that child support was being sought in the dissolution proceeding since the petition did not ask for such support.

██ We hasten to note that our decision today does not in any way deprive courts of their opportunity or power to protect the best interests of children affected by dissolution proceedings.[4] Our insistence on uniform adherence to the procedural requirements of section 580 is simply intended to afford respondents notice of the claims they face, without in any way preventing courts from ensuring that the issue of child support is addressed in appropriate cases.

 When a petition does not request child support in a case in which the court feels it should be ordered, or when the court desires additional information about the parties' financial situation, the court has sufficient leverage to ensure that these matters are put at issue. For example, the court can direct the petitioner to file a motion to modify the judgment to provide for child support. (Civ. Code, § 4700.) The court can also withhold judgment and order the petitioner to amend the petition to seek support and to serve the amended petition on the respondent. (*Greenup* v. *Rodman, supra*, 42 Cal.3d at p. 830; see also, e.g., *Peck* v. *Peck* (1942) 52 Cal.App.2d 792, 794 [127 P.2d 94]; *Darsie* v. *Darsie* (1942) 49 Cal.App.2d 491, 496 [122 P.2d 64].) In *Greenup, supra*, we emphasized that the plaintiff's prayer "could have been corrected in the same way as in cases of default for failure to answer, i.e. by giving plaintiff the option of serving and filing an amended complaint." (42 Cal.3d at p. 830.)

In addition, a county paying benefits can file its own action for support. (Civ. Code, § 248.) Pursuant to Civil Code section 248, the county can proceed on behalf of either the child to whom support is due or on its own behalf if it has furnished support to the child.

Any one of the foregoing procedures, therefore, will ensure that the respondent's statutory and constitutional rights to notice are respected while the court's jurisdiction to make an appropriate child support award is preserved.

---

[4] Furthermore, our decision should in no way be interpreted to undermine that body of law which establishes the right of a child to maintain an action against a parent for support. "A child has important rights of his own. Thus, he can maintain an action against a parent for support, despite the appointment of a guardian and denial of custody to that parent. [Citation omitted.] . . . While parents may be bound by a mother's agreement releasing a father from liability for support of the children, neither the court nor the children are bound by the agreement. [Citations omitted.] The single most important consideration in an action for support is the need of the child. [Citation omitted.]" (*In re Marriage of O'Connell* (1978) 80 Cal.App.3d 849, 856 [146 Cal.Rptr. 26].)

## DISPOSITION

The decision of the Court of Appeal is reversed, and the cause remanded with instructions to order the superior court to vacate its order of child support and its order assigning wages to the City and County of San Francisco.

Lucas, C. J., Broussard, J., Eagleson, J., Kennard, J., and Arabian, J., concurred.

**MOSK, J.**—I dissent.

I would pose the question in this case somewhat differently: may a father avoid his statutory duty to support his child throughout her minority merely because the mother neglected in divorce proceedings to specifically petition the court to make an award of child support? I would answer that question in the negative.

Since 1971, when these parents dissolved their marriage, the father has contributed nothing for the support of his child. As a result, the taxpayers paid for that support. It would appear equitable, indeed compelling, for the father to repay that sum to the taxpayers.

The defenses of the father are not persuasive, either legally or morally. First, he claims he bought his daughter some clothes on occasion, a stereo, and some dancing lessons. That was considerate but hardly generous, and it did not compensate for his failure to provide the necessities of life for nearly 17 years. Where did he believe the mother was obtaining the resources to put the child's food on the table? Since he claims to have maintained "a close relationship with his daughter through regular visits," he cannot have been unaware that the mother was compelled to rely on a public agency to provide the child's necessities for sustenance.

Second, although the court order was a matter of public record, the father asserts he was unaware of the order, a dubious fact on which the majority heavily rely. They point out the petition for dissolution did not specifically request child support. The authorities they cite, however, are not apposite. While in general a trial judge may not make an award or render a judgment in excess of the prayer of a complaint or petition, no case has denied a court the authority to order support of a child pursuant to Civil Code sections 196 and 4700. *Burtnett* v. *King* (1949) 33 Cal.2d 805 [205 P.2d 657, 12 A.L.R.2d 333] involved an award of property; *In re Marriage of Wells* (1988) 206 Cal.App.3d 1434 [254 Cal.Rptr. 185] was concerned with spousal support not requested in the petition; *Greenup* v. *Rodman* (1986) 42 Cal.3d 822 [231 Cal.Rptr. 220, 726 P.2d 1295] was a

fraud action; and *Becker* v. *S.P.V. Construction Co.* (1980) 27 Cal.3d 489 [165 Cal.Rptr. 825, 612 P.2d 915] involved a breach of contract.

In short, no case has denied a court the power to order a father to comply with his *statutory* duty to support his child, a duty of which he is deemed to be aware, regardless of the content of a divorce complaint or petition for dissolution. The fact that the mother omitted to check boxes in a printed form can neither proscribe the authority of the court nor eliminate the statutory duty of a father to support his child.

The rule was restated more than four decades ago in *Bernard* v. *Bernard* (1947) 79 Cal.App.2d 353, 358 [179 P.2d 625]: "Although the court may completely sever the marital relationship, quite obviously it cannot alter the fact that the mother and father are the parents of their offspring. Therefore, the duty to support as provided in [the Civil Code] exists independently of the marriage status, and is a continuing obligation 'during the minority of any of the children of the marriage.' . . . *It is unaffected by either the interlocutory or final decree and may be enforced by a proper proceeding.*" (Italics added; accord *Estate of Goulart* (1963) 218 Cal.App.2d 260, 263 [32 Cal.Rptr. 229, 6 A.L.R.3d 1380].)

I will concede that the court order for $100 per month in child support, although it appears modest, may not conclusively establish the precise sums due from the father. It would be appropriate for the trial court to take testimony on the child's needs during her minority as determined by the public agency and on the ability of the father to pay. But I have no doubt of the right of the public agency to seek recompense for reasonable child support it provided during the many years the father neglected his statutory duty.

The majority, obviously concerned about the inequity of their result, suggest alternative procedures, one involving action by the daughter against her father. (Maj. opn., *ante*, p. 1172, fn. 4.) This seems an unnecessarily abrasive substitute for a perfectly sound action brought by the public agency that expended funds for the daughter's support, funds that the father should have provided.

I would affirm the judgment of the Court of Appeal.