[No. H008692. Sixth Dist. July 29, 1992.]

In re the Marriage of JOHN and RAYTHA O'CONNELL.
NONA O'CONNELL, as Special Administrator, etc., Intervener and
Appellant, v.
RAYTHA O'CONNELL, Respondent.

**COUNSEL**

Robert L. Wood for Intervener and Appellant.

Robert A. Jette, Jr., for Respondent.

**OPINION**

**COTTLE, Acting P. J.—**

*Introduction*

John O'Connell died on December 25, 1990, leaving two life insurance policies sponsored by his employer totaling $212,000, according to his widow, Nona O'Connell.[1] At issue is whether John's ex-wife, Raytha O'Connell, and their son, Richard, are entitled to two-thirds of the insurance proceeds because of a court order requiring they be designated as beneficiaries of the policies. Nona, as an individual and as executrix of John's estate,

---

[1] The policies are not part of the record on appeal.

appeals from an order denying her motion to vacate the order that John designate Raytha and Richard as joint life insurance beneficiaries with Nona. Nona contends the court lacked jurisdiction to make the original order because it was beyond the court's power, the life insurance was not properly before the court, and Nona received no prior notice of the request to modify the life insurance. Facts are stated where relevant. For the reasons stated below, we will affirm the order.

*Facts*

On July 15, 1985, John, a design specialist for Lockheed Missiles and Space Co., filed for dissolution of his 16-year marriage to Raytha. In July 1986 the parties stipulated to bifurcate the proceedings as to the issue of status. On November 12, 1986, their marriage was dissolved with the court reserving jurisdiction over "all other issues in this proceeding, including, but not limited to, division of property and debts, spousal support, child support and injunctive orders."

According to Nona, John married her on November 14, 1986, and designated her the beneficiary of life insurance provided through Lockheed.

On December 30, 1987, after trial of remaining issues, the court ordered John to pay monthly spousal support of $651 and child support of $912 for two minor children. This amended judgment also divided the parties' property and reserved jurisdiction over other issues. There was no disposition of John's life insurance.

By stipulation and order filed April 18, 1990, the parties agreed that child support would be reduced to $450 and spousal support to $200 monthly as of September 1, 1989.

On June 4, 1990, John filed a motion seeking a reduction in child and spousal support due to his disability.[2] Raytha offered, by letter and telephone call but without a formal responsive pleading, to agree to reduction if she alone or she and their children were named beneficiaries of John's life insurance. According to Nona, John did not appear at the hearing on July 27, 1990, due to illness. At the hearing John's counsel objected to the request to modify the insurance because it was not made through formal pleadings,[3] it would be unfair to Nona, John had no obligation to support his adult son,

---

[2]The details of this motion are described more fully below.

[3]Counsel stated: "I've objected to that and object to it being heard today. It is not before the court. [¶] [Raytha's counsel] has not filed an affirmative motion to have it heard, did not file responsive pleadings to my motion to put me on notice that that was going to be his request,

and both children would be entitled to Social Security benefits on John's death if he survived to the age of 62 on October 17, 1990. The court ordered reductions in monthly spousal support to nothing and child support to $125 during John's disability and, as child and spousal support, that John name Raytha and Richard, his minor son, as beneficiaries of his life insurance along with Nona. This order was served on John on September 20, 1990.

John died on December 25, 1990, without providing for his children in his will. According to Nona, John was covered by two life insurance policies purchased through his employer, a $112,000 basic policy and a $100,000 optional policy, the latter purchased by John's earnings without his employer's contribution.

On January 15, 1991, Raytha filed a motion seeking enforcement of the life insurance modification order and alleging John did not change beneficiaries before he died. On January 31, 1991, the court granted Nona's request to intervene in this action. Nona was appointed the executrix of John's estate on March 4, 1991.

On March 15, 1991, Nona filed a motion to vacate the order modifying the life insurance. The motion was denied at a hearing on May 10, 1991, for reasons partly quoted below.

*Discussion*

1. *Was the Marital Dissolution Court Empowered to Order the Designation of Life Insurance Beneficiaries as a Support Substitute?*

In a dissolution action the court can order a spouse as a form of support to maintain life insurance to benefit either the other spouse or a minor child. (*Franklin Life Ins. Co.* v. *Kitchens* (1967) 249 Cal.App.2d 623, 629-631 [57 Cal.Rptr. 652]; Civ. Code, § 4801.4;[4] see Annot., Divorce: Provision in decree that one party obtain or maintain life insurance for benefit of other party or child (1974) 59 A.L.R.3d 9.) Section 4801.4 of the Family Law Act (§ 4000), cited in the trial court's statement of decision, provides in pertinent part: "For the purposes of Section 4801, where it is just and reasonable in view of the circumstances of the respective parties, the court, in determining the needs of a supported spouse, may include an amount sufficient to purchase an annuity for the supported spouse or to

---

and I didn't know that until, I guess, just a day or two ago when we discussed it on the telephone."

[4]Unspecified section references are to the Civil Code. Unspecified rule references are to the California Rules of Court.

maintain insurance for the benefit of the supported spouse on the life of the spouse required to make the payment of support, . . . so that the supported spouse will not be left without means for support in the event that the order for support is terminated by the death of the party required to make the payment of support. Except as otherwise agreed to by the parties in writing, an order made under this section may be modified or terminated at the discretion of the court at any time prior to the death of the party required to make the payment of support."

As explained in *In re Marriage of Ziegler* (1989) 207 Cal.App.3d 788 [255 Cal.Rptr. 100]: "[T]he Law Revision Commission comments to section 4801.4 . . . state: 'If insurance is already in force on the life of the support obligor, this section authorizes the court to order that the support obligor maintain some or all of the insurance in force and name the supported spouse as the beneficiary of the insurance.' " (*Id.* at p. 791.) The statute authorized a court to require an ex-husband to maintain a military survivor benefit plan as a form of annuity for his ex-wife. (*Ibid.*)

■ Nona challenges the order as requiring a security for future support payments unauthorized by section 4701.1. (Cf. *Taylor* v. *Superior Court* (1990) 218 Cal.App.3d 1185, 1188 [267 Cal.Rptr. 519].) *Ziegler, supra,* 207 Cal.App.3d 788, rejected a contention that an order to provide an annuity was the equivalent of such a security deposit. The purpose of section 4801.4 "is to insure support is provided for the supported spouse *after* the obligor dies. It has nothing to do with providing 'security' for the payment of support owed during the obligor's lifetime." (*Id.* at p. 793, italics in original; but see *Franklin Life Ins. Co., supra,* 249 Cal.App.2d 623, 630-632.)

Nona also contends this order violates the rule that a spousal support obligation ordinarily ends on the obligor's death. (§ 4801, subd. (b).) *Ziegler, supra,* 207 Cal.App.3d 788, also rejected this contention. "Section 4801.4 does not change this rule. (Cal. Law Revision Com. com., 12A West's Ann. Civ. Code, *supra,* § 4801.4 . . . .)" (*Id.* at p. 792.) The obligor's death still ends the obligor's support obligation, specifically to maintain the insurance or annuity, and creates a new obligation in the insurer or annuity provider to the supported spouse. (*Ibid.*)

■ On the same reasoning, provision of insurance for a minor does not extend the obligor's child support obligation beyond the obligor's death. Even if it did, a child support obligation survives the obligor's death and becomes the obligation of the obligor's estate. (*Franklin Life Ins. Co., supra,* 249 Cal.App.2d 623, 631; *In re Marriage of Gregory* (1991) 230 Cal.App.3d 112, 115-116 [281 Cal.Rptr. 188].)

Thus, courts have the power in marital dissolutions to order maintenance of life insurance for the benefit of children and former spouses as a support substitute.

## 2. *Was the Issue of Modifying John's Life Insurance Before the Court?*

Nona contends this particular dissolution court had no jurisdiction to order modification of John's life insurance because Raytha did not formally bring the issue before the court by either a motion or a pleading responding to John's request to reduce support. We examine what actually transpired in further detail.

After entry of the dissolution judgment, on June 4, 1990, John filed a motion, set for July 27, 1990, seeking a reduction in child and spousal support because he was on disability after having major surgery. His motion requested support be established pursuant to Santa Clara County guidelines.[5] The motion for modification form advised Raytha to file any responsive declarations with the court and serve them on John at least five court days before the hearing. By letter dated July 13, 1990, and a later telephone call between counsel, Raytha offered to agree to the support reductions if she was named sole beneficiary of John's employer-sponsored life insurance or if she and their two children were named equal beneficiaries with Nona. In this way John was expressly notified that his life insurance was in issue, contrary to Nona's claim that "[n]o notice whatsoever was given . . . ."

The objections by John's counsel at the hearing and the resulting order have been described above in our statement of the facts. In view of the objection to lack of notice, there neither is nor can be any contention of waiver of the notice issue. (Compare *Grenall* v. *Grenall* (1959) 169 Cal.App.2d 748, 751 [337 P.2d 896].) Contrary to Nona's contention, the court ruled on this objection in its statement of decision by overruling it for the following reasons. "Santa Clara County Guidelines, specifically Rule 17, afford the court a broad discretion to make appropriate orders for spousal and child support . . . . It is and has been common practice for the Santa Clara County Superior Court to require parents involved in domestic litigation such as this to maintain employer-sponsored life insurance for former spouses and children of the marriage . . . . [John] reasonably should have expected the issue of life insurance for his former spouse and children to be considered by the court at the hearing on July 27, 1990 . . . . [John], by notice to his attorney prior to the July 27, 1990 hearing date, was informed both orally and in writing by counsel for [Raytha] that a request for court-ordered insurance coverage would be raised at the July 27, 1990, hearing."

---

[5]These guidelines are not in the record on appeal.

■ Nona claims violations of both constitutional and statutory prerequisites to a judicial award that the affected party be given adequate notice. "It is a fundamental concept of due process that a judgment against a defendant cannot be entered unless he was given proper notice and an opportunity to defend. (U.S. Const., [Amend.] XIV . . . .)" (*In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1166 [276 Cal.Rptr. 290, 801 P.2d 1041, 5 A.L.R.5th 1156].) A marital dissolution court cannot grant relief not demanded in the complaint against a defaulting party. (*Id.* at pp. 1171-1172 — no request for child support; *Valenzuela* v. *Valenzuela* (1959) 168 Cal.App.2d 565, 567-568 [336 P.2d 25] — no request for payment of community debts; *Looper* v. *Looper* (1963) 222 Cal.App.2d 247, 252-253 [34 Cal.Rptr. 912] — no request to award wife community property; Code Civ. Proc., § 580.)[6] Similarly, a dissolution court cannot grant unrequested relief against a party who appears without affording that party notice and an opportunity to respond. (*Wilson* v. *Wilson* (1951) 104 Cal.App.2d 167, 174 [231 P.2d 128] — no request for security; *Blankenship* v. *Blankenship* (1963) 212 Cal.App.2d 736, 745-746 [28 Cal.Rptr. 176] — no request for lien.) Due process requires affording a litigant a reasonable opportunity, by continuance or otherwise, to respond to evidence or argument that is new, surprising, and relevant. (*Moore* v. *California Minerals etc. Corp.* (1953) 115 Cal.App.2d 834, 836-837 [252 P.2d 1005]; cf. *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1168-1171 [208 Cal.Rptr. 345]; *Spector* v. *Superior Court* (1961) 55 Cal.2d 839, 843-844 [13 Cal.Rptr. 189, 361 P.2d 909]; Gov. Code, § 68081.)

■ Generally motions under the Family Law Act, including motions to modify support in marital dissolution proceedings, are governed by the rules for motions stated in the Code of Civil Procedure. (*In re Marriage of Mena* (1989) 212 Cal.App.3d 12, 20 [260 Cal.Rptr. 314]; *Forslund* v. *Forslund* (1964) 225 Cal.App.2d 476, 484-485 [37 Cal.Rptr. 489]; rule 1206.)[7] Usually, motions shall be served and filed at least fifteen court days, all papers opposing the motion at least five court days, and any reply two days before the hearing. (Code Civ. Proc., § 1005, subd. (b); rule 317.)[8]

Was Raytha required to formally request modifying John's life insurance by either a written motion or opposition to John's reduction motion in order

---

[6]Code of Civil Procedure section 580 provides: "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case, the court may grant him any relief consistent with the case made by the complaint and embraced within the issue."

[7]Rule 1206 provides: "Except as otherwise provided in these rules, all provisions of law applicable to civil actions generally apply regardless of nomenclature to a proceeding pursuant to the Family Law Act if they would otherwise apply to such proceeding without reference to this rule."

[8]One exception in the Family Law Act is that in some circumstances attorney fees motions "may be made without notice by an oral motion in open court . . . ." (§ 4370, subd. (b).) Section 4809 states another exception to the general statutes regarding notice of motions:

to put the life insurance in issue? Not if John's motion itself put the issue before the court.

Ordinarily, when an issue is joined at a contested hearing or trial, courts are authorized to grant "any relief consistent with the case made by the complaint and embraced within the issue." (Code Civ. Proc., § 580.) In establishing and modifying spousal support, courts are required to consider a broad range of factors, including the length of the marriage; the parties' standard of living; the extent to which either spouse contributed to the other's career; and the income, earning capacity, assets, liabilities, health, and age of each spouse. (§ 4801.) In establishing and modifying child support, courts are required to consider the complete picture of both parents' incomes and expenses as well as the relative times of custody. (§ 4720.2; rules 1243, 1274.)

■ Thus, courts have not been precluded from considering the big picture by the particular phrasing of a motion to establish or modify support. A motion to increase support has been held to put modification in general in issue and authorizes the court "to either increase or decrease the payments to meet the equities of the situation," though the opponent has not formally requested a decrease. (*Anderson* v. *Anderson* (1954) 129 Cal.App.2d 403, 407 [276 P.2d 862].)[9] A motion to increase support has also been held to "implicit[ly]" put in issue the duration of support. (*In re Marriage of Gonzales* (1989) 207 Cal.App.3d 1198, 1202-1203 [255 Cal.Rptr. 336].)[10]

*Anderson* v. *Mart* (1956) 47 Cal.2d 274 [303 P.2d 539], considered whether a motion seeking support presented the issue of confirming a

"After the entry of a judgment decreeing the dissolution of the marriage . . . , no modification of such judgment . . . and no subsequent order in such proceedings shall be valid unless any prior notice otherwise required to be given to a party to the proceeding be served, in such manner as such notice is otherwise permitted by law to be served, upon the party himself. For such purpose, service upon the attorney of record shall not be sufficient." We do not understand Nona to claim Raytha was required by section 4809 to serve her insurance modification request on John personally. (Cf. *In re Marriage of Kreiss* (1990) 224 Cal.App.3d 1033 [274 Cal.Rptr. 226].)

[9]In contrast, *Bryan* v. *Bryan* (1967) 255 Cal.App.2d 833 [63 Cal.Rptr. 612], concluded that an oral opposition to an application for a writ of execution for support was not properly before the court. The opponent made a special appearance challenging the court's jurisdiction and also argued the merits based on declarations filed in opposition to an earlier similar application. (*Id.* at pp. 837, 840, fn. 3.) The appellate court noted the absence of a "formal notice of opposition" and stated, "The court had no jurisdiction to consider a motion thus improperly urged ([citations]; Code Civ. Proc., § 1010.)" (*Id.* at p. 841.) *Bryan* held an opposition to the standard of a motion rather than a response, in discord with the weight of authority.

[10]*Gonzales* also relied on an express provision of the notice of hearing mentioning that support normally continues until the child turns 18. (207 Cal.App.3d 1198, 1202-1203.) The forms of motion and notice of hearing in this case did not expressly mention life insurance.

property settlement agreement mentioned in the motion without any "request that the court approve the agreement or incorporate it in its decree." (*Id.* at p. 276.) The court determined that the motion presented the issue of confirmation because the support sought was in the amount specified in the agreement and the agreement provided for obtaining court approval. (*Id.* at pp. 283-283.) Thus the court "did not grant relief in excess of that demanded in the complaint or inconsistent with the case made by the complaint and embraced within the issue." (*Id.* at p. 282.)

We agree with the trial court that John's motion to reduce support put his life insurance in issue. When a support obligor pleads inability to maintain an existing level of spousal and child support from current income, it is reasonable to expect that the court will consider available support alternatives including modification of life insurance. The trial court found that local practice also justified this expectation. At the hearing John did not claim to be so surprised as to be unable to respond to the merits, nor could he in light of Raytha's informal requests to modify his life insurance. John in fact did respond to the merits, arguing that his children had other support alternatives, such as Social Security benefits. Under these circumstances, the trial court in ruling on John's motion to reduce support had jurisdiction over his life insurance.

### 3. Must an Order to Change Life Insurance Beneficiaries Be Preceded by Notice to the Current Beneficiary?

Nona contends that the dissolution court could not order her husband to add beneficiaries to his life insurance without notice to her as the existing beneficiary. This contention requires consideration of the nature of Nona's interests in John's life insurance as both the designated beneficiary and his surviving spouse.

It remains surprisingly unsettled whether the community interest in an insurance policy limits an insured spouse's ability to change beneficiaries. We will attempt to define this community interest after analyzing related interests. It helps to distinguish among four related interests: (1) the insured's contractual or statutory right to change beneficiaries (Ins. Code, § 10170),[11] (2) any community interest in that right, (3) the beneficiary's interest in remaining designated, and (4) the community interest in the policy proceeds.

---

[11]Insurance Code section 10170, subdivision (e) provides that an agreement to pay life insurance "may be rescinded or amended by the parties thereto without the consent of any beneficiary therein designated unless the rights of any such beneficiary have been expressly declared to be irrevocable."

## A. *The Insured's Right to Designate Beneficiaries and the Beneficiary's Interest in Remaining Designated*

■ To an insured, the right to designate and change insurance beneficiaries may be a vested contractual right worthy of constitutional protection against impairment. (*Frazier v. Tulare County Bd. of Retirement* (1974) 42 Cal.App.3d 1046, 1051-1052 [117 Cal.Rptr. 386] — beneficiary designation could not be overridden by Government Code amendment.) To the designated beneficiary, however, the insured's unfettered right to change beneficiaries trivializes the beneficiary's interest into a mere unvested expectancy unworthy of constitutional protection. (*Wissner v. Wissner* (1950) 338 U.S. 655, 661 [94 L.Ed. 424, 430, 70 S.Ct. 398] — California community property law neither prevents federal insured from changing insurance beneficiary nor controls distribution of proceeds.) It has long been established, when the insured retains the right to change beneficiaries, the designated beneficiary's interest is a mere revocable expectancy vesting only on the insured's death, though the policy is acquired with community funds. (*New York L. Ins. Co. v. Bank of Italy* (1923) 60 Cal.App. 602, 606 [214 P. 61]; *Union Mutual Life Ins. Co. v. Broderick* (1925) 196 Cal. 497, 506-507 [238 P. 1034]; *Blethen v. Pacific Mut. Life Ins. Co.* (1926) 198 Cal. 91, 98-99 [243 P. 431]; *Grimm v. Grimm* (1945) 26 Cal.2d 173, 175-176 [157 P.2d 841]; *Sieroty v. Silver* (1962) 58 Cal.2d 799, 802-803 [26 Cal.Rptr. 635, 376 P.2d 563] disapproved on another ground in *Estate of Baglione* (1966) 65 Cal.2d 192, 197 (53 Cal.Rptr. 139, 417 P.2d 683).)

The insured can waive any right to change beneficiaries by appropriate agreement, such as by making an irrevocable beneficiary designation. An irrevocably designated beneficiary obtains a vested contractual right not dependent on any community interest. (Cf. *Waxman v. Citizens Nat. Trust & Sav. Bk.* (1954) 123 Cal.App.2d 145, 148-149 [266 P.2d 48], and cases there cited; see *Phoenix Mutual L. Ins. Co. v. Birkelund* (1946) 29 Cal.2d 352, 359-360 [175 P.2d 5].) When an insured ignores a court order or contractual obligation to retain an irrevocable beneficiary, that beneficiary is entitled to recover the insurance proceeds. (*Cramer v. Biddison* (1968) 257 Cal.App.2d 720, 724-725 [65 Cal.Rptr. 624]; *Waxman, supra,* 123 Cal.App.2d at p. 149; *Wright v. Wright* (1969) 276 Cal.App.2d 56, 60-61 [200 Cal.Rptr. 28, 676 P.2d 1050].)

## B. *The Community Interest in Life Insurance Proceeds*

■ Acquisition by community funds does affect life insurance. Both spouses ordinarily have a community interest in the proceeds of an insurance policy to the extent it was acquired with community funds. (*New York L. Ins.*

*Co., supra*, 60 Cal.App. 602, 606-607; *Union Mutual Life Ins. Co., supra*, 196 Cal. 497, 503; *Blethen, supra*, 198 Cal. 91, 99; *Grimm, supra*, 26 Cal.2d 173, 175; *Sieroty, supra*, 58 Cal.2d 799, 803; *Life Insurance Co. of North America v. Cassidy* (1984) 35 Cal.3d 599, 605 [200 Cal.Rptr. 28, 676 P.2d 1050].)[12] Life insurance proceeds are subject to the general rule that a spouse cannot dispose of community personal property without either the other spouse's written consent or consideration. (§ 5125, subd. (b).) Thus, it is established that after the insured's death the surviving spouse can bring an action to set aside any unauthorized gift of insurance proceeds to the extent of his or her community interest, if this right has not been waived or released. (*Blethen, supra*, 198 Cal. at pp. 99-101; *Sieroty, supra*, 58 Cal.2d at p. 803; *Tyre* v. *Aetna Life Ins. Co.* (1960) 54 Cal.2d 399, 404-405 [6 Cal.Rptr. 13, 353 P.2d 725]; *Life Insurance Co. of North America, supra*, 35 Cal.3d at pp. 605-606.)

### C.  *The Community Interest, If Any, in an Insured's Right to Change Beneficiaries*

What remains unsettled is whether there is a community interest in the insured's right to change beneficiaries. Is this interest more like the community interest in the insurance proceeds or the designated beneficiary's mere expectancy?

On the one hand we find dictum stating a spouse can completely set aside an insurance beneficiary change during the insured's life if it amounts to an unauthorized gift of community property. (See *Tyre, supra*, 54 Cal.2d 399, 405; *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355, 363 [33 Cal.Rptr. 257, 384 P.2d 649]; *Polk* v. *Polk* (1964) 228 Cal.App.2d 763, 782 [39

---

[12]Some courts have treated term life insurance differently than whole life insurance. They disagree about whether term life insurance proceeds are community property to the extent the policy was acquired with community funds. One says yes (*Biltoft* v. *Wootten* (1979 [4th Dist., Div. 2]) 96 Cal.App.3d 58, 61-62 [157 Cal.Rptr. 581], while another says no (*Estate of Logan* (1987 [1st Dist., Div. 5]) 191 Cal.App.3d 319, 325-326 [236 Cal.Rptr. 368]). *Estate of Logan, supra*, actually holds the policy itself was not community property, but the effect was to disallow a surviving spouse's claim to the proceeds. (*Id.* at pp. 321-322.) Courts also disagree about whether a term, like a whole, life insurance policy itself is community property divisible at dissolution during the insured's life. Some take the view that it is not property. (*In re Marriage of Lorenz* (1983 [2d Dist., Div. 4]) 146 Cal.App.3d 464, 468 [194 Cal.Rptr. 237]; *In re Marriage of Spengler* (1992 [3d Dist.]) 5 Cal.App.4th 288, 297-299 [6 Cal.Rptr.2d 764].) Others say it is. (*In re Marriage of Gonzalez* (1985 [4th Dist., Div. 3]) 168 Cal.App.3d 1021, 1025-1026 [214 Cal.Rptr. 634, 54 A.L.R.4th 1195]; see *Estate of Logan, supra*, 191 Cal.App.3d at p. 326 — "If the insured becomes uninsurable during the term paid with community funds, then the right to future insurance coverage which cannot otherwise be purchased is a community asset to be divided upon dissolution.")

The record does not indicate whether the policies at issue were term or whole life. We need not and do not choose sides on these issues since our conclusions do not depend on the type of insurance in issue.

Cal.Rptr. 824].) None of those cases involved any challenge to a beneficiary change during the insured's life. *Tyre, supra,* and *Polk, supra,* actually applied the rule that after the insured's death the surviving spouse can set aside a beneficiary change to the extent of her community interest in the insurance proceeds. (54 Cal.2d at pp. 404-406; 228 Cal.App.2d at pp. 782, 785.) *Benson, supra,* merely discussed the community interest in life insurance in order to contrast it with public employee pension benefits. (60 Cal.2d at p. 363.) None of these cases considered the effect of the provision in Insurance Code section 10170 that a beneficiary's consent to change life insurance is only necessary when the beneficiary is irrevocable. *Polk, supra,* expressly held this statute inapplicable because it postdated the insurance policies in issue. (228 Cal.App.2d at p. 787.)

On the other hand, in addition to the unsettled scope of Insurance Code section 10170, we find dictum stating a spouse has no cause of action arising from an insurance beneficiary change until the insured's death, though meanwhile the spouse can notify the insurer of the community interest in a policy. (See *Estate of Mendenhall* (1960) 182 Cal.App.2d 441, 445-446 [6 Cal.Rptr. 45].) That opinion was filed four days after *Tyre, supra,* and does not discuss it. That case also involved no challenge to a beneficiary change during the insured's life. It involved the taxability to the surviving spouse's estate of insurance proceeds.

Thus, there is nonbinding, inconclusive support for concluding a spouse by virtue of his or her community interest in a life insurance policy has a somewhat greater interest in the insured spouse's right to change beneficiaries than the designated beneficiary's mere unvested expectancy.

D. *Nona's Entitlement to Notice of a Potential Court Order to Change Her Husband's Life Insurance Beneficiary*

█ Applying the rules above to the facts of this case, we conclude, absent any evidence that Nona was an irrevocable life insurance beneficiary, her status as a designated beneficiary conferred no protection against John changing life insurance beneficiaries. However, her status as his spouse arguably enhanced her interest in his right to change beneficiaries to the extent the insurance was acquired by community funds of her marriage to John.

As Raytha points out, Nona's claim on appeal that the life insurance was purchased with her community funds is unwarranted. Nona merely declared, "The premiums on the optional life policy were paid entirely from John's earnings . . . ." Based on this declaration, she asked the trial court to find

"all premiums on the life insurance policies . . . were paid with the community property of John O'Connell and Nona O'Connell." The trial court made no finding on this issue, perhaps due to the following conflicting evidence. John's original declaration of income and expenses, filed May 30, 1986, reflected a deduction from income during his marriage to Raytha for life insurance. Later declarations filed June 9, 1987, April 12, 1989, and June 20, 1990, showed unspecified tax and insurance expenses but no life insurance deduction. We cannot assume the trial court implicitly resolved this factual dispute against Nona. (Code Civ. Proc., § 634.)

Even if we accept for the sake of discussion the questionable factual premise that the insurance policies were acquired with Nona's community funds and we apply the questionable legal premise that she therefore had a right during John's life to set aside his change of life insurance beneficiaries, Nona was not entitled to prior notice of the dissolution court's potential order to change John's life insurance beneficiaries. Any community interest in an insured's right to change beneficiaries is limited to avoiding gifts of community personal property. As Raytha contends and Nona disputes, there was no actual or potential unauthorized gift in this case.

John's remarriage created new community and separate property, both of which were subject to his existing spousal and child support obligations. (§§ 5120.110, 5120.130, 5120.150, subd. (a); see *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 563-564 [63 Cal.Rptr. 13, 432 P.2d 709]; *In re Marriage of Barnes* (1978) 83 Cal.App.3d 143, 149 [147 Cal.Rptr. 710].) A change in life insurance beneficiaries to fulfill existing support obligations is not a gift (*Burgart* v. *Burgart* (1970) 5 Cal.App.3d 409, 412-413 [85 Cal.Rptr. 122]; cf. *Gunn* v. *United Air Lines Inc.* (1982) 138 Cal.App.3d 765, 768-769 [188 Cal.Rptr. 302]), particularly when ordered by a court. Thus, even if the life insurance policies were acquired with Nona's community funds, it was no gift for the court to order John to add Raytha and Richard as beneficiaries. (Cf. *Burgart, supra*, 5 Cal.App.3d at pp. 412-413.)

Whatever the exact nature of Nona's interest as John's spouse in his right to change life insurance beneficiaries, it did not extend beyond the prevention of an unauthorized gift of community property. Raytha's request to designate herself and her child as additional beneficiaries of John's life insurance was made and considered by the dissolution court as a support susbstitute. This request did not propose a potential gift of Nona's community property and the resulting order did not effectuate such a gift. Therefore,

Nona had no interest at stake justifying advance notice to her of the possibility of an order to change John's life insurance beneficiaries.[13]

DISPOSITION

The order is affirmed.

Capaccioli, J., and O'Farrell, J.,* concurred.

---

[13]A different conclusion might result if the court had attempted to adjudicate without notice to Nona the extent of her community interest in the life insurance proceeds or her right to reimbursement, if any (§ 5120.150; e.g., *In re Marriage of Williams* (1989) 213 Cal.App.3d 1239 [262 Cal.Rptr. 317]), but these issues were not presented.

*Judge of the Monterey Superior Court sitting under Assignment by the Chairperson of the Judicial Council.