Filed 11/18/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| TODD BERENDES et al.,<br><br>    Plaintiffs and Appellants,<br><br>  v.<br><br>FARMERS INSURANCE EXCHANGE et al.,<br><br>    Defendants and Respondents. | C068066<br><br>(Super. Ct. No. 34-2008-00024588-CU-IC-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Thomas Edward Warriner, Judge. (Retired judge of the Yolo Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Wilcoxen Callaham, Daniel E. Wilcoxen, Walter H. Loving, III, Drew M. Widders; Rivera & Associates, Jesse M. Rivera, for Plaintiffs and Appellants.

Hansen, Kohls, Jones, Sommer & Jacob, Daniel V. Kohls and Bret N. Batchman, for Defendants and Respondents.

1

The husband and daughter of a pedestrian killed by an underinsured motorist sued Farmers Insurance Exchange and others (Farmers). The complaint alleged that coverage provided by Farmers to the decedent's father also provided underinsured motorist coverage for the decedent. Finding that neither the insurance statutes nor the policies provided underinsured motorist coverage for the decedent as a pedestrian, the trial court granted Farmers's summary judgment motion. Plaintiffs appeal the ensuing judgment.

On appeal, plaintiffs contend that (1) Insurance Code Section 11580.2[1] requires that underinsured motorist coverage be extended to everyone with liability coverage unless the underinsured motorist coverage is expressly waived; (2) the policies are ambiguous concerning whether they provided underinsured motorist coverage to the decedent as a pedestrian, and (3) the circumstances caused the decedent and her father to reasonably expect that the policies included underinsured motorist coverage of the decedent as a pedestrian.

Finding no merit in these contentions, we affirm.

FACTS

Kristina Berendes was struck and killed by a car driven by David Scott Duril while she was a pedestrian. She was 39 years old at the time of her death. She was married to Todd Berendes, and they had a daughter named Taylor. For at least one year prior to the accident, Kristina had been living with Todd and Taylor, and not with her father, William Felix. Todd and Taylor are the plaintiffs in this case.

Duril's insurer, California State Automobile Association, paid plaintiffs his insurance policy limit of $50,000 for causing Kristina's death. In addition, Todd had underinsured motorist coverage through Liberty Mutual Insurance, which paid an additional $200,000 to plaintiffs because Kristina was covered as Todd's spouse.

---

[1]     Undesignated statutory references are to the Insurance Code.

2

The insurance policies at issue in this case were three policies issued by Farmers to Felix as the named insured. The policies included: (1) an automobile policy for a 2001 Chrysler PT Cruiser; (2) an automobile policy for a 2005 Mercedes-Benz ML350; and (3) an umbrella policy with a limit of $1 million. Kristina paid an additional monthly premium to be listed and covered as a *rated driver* under the PT Cruiser policy. There was no descriptive language identifying any *rated drivers* on the Mercedes policy. It is undisputed that, if either the PT Cruiser policy or the Mercedes policy gave Kristina underinsured motorist coverage as a pedestrian, then plaintiffs can recover under Felix's $1-million umbrella policy.

At the time of her death, Kristina worked as a Farmers underwriting agent. Felix purchased a 2005 Mercedes-Benz ML350 as a gift to Kristina for graduating college. Before giving the Mercedes to Kristina, Felix contacted Kristina's office where her coworkers set up the Mercedes policy under Felix's name.

PROCEDURE

Plaintiffs filed a third amended complaint against Farmers, alleging bad faith and breach of contract. Farmers filed a motion for summary judgment claiming that there was no liability because Felix's policies did not include underinsured motorist coverage for Kristina, either by statutory mandate or contract interpretation. The trial court issued a tentative ruling granting the motion for summary judgment, stating in relevant part: "Plaintiffs having failed to demonstrate the existence of a triable issue of material fact as to Kristina's [underinsured motorist] coverage under either the PT Cruiser or Mercedes policy (and therefore also under the umbrella policy), [Farmers is] entitled to summary adjudication . . . ."

Oral arguments were heard the next day, and one month later, the trial court adopted the tentative ruling and signed the order granting Farmers's motion for summary judgment. The court entered judgment, and this appeal followed.

DISCUSSION

I

*Section 11580.2*

Plaintiffs' first contention is purely statutory. They contend that under section 11580.2, in their words, "no insurance policy covering a person for liability insurance shall be issued in this state unless the policy also covers the person for [the liability of an underinsured motorist]. The only way to avoid this requirement is to obtain a signed written waiver." Plaintiffs claim that, since Kristina was covered for liability under the PT Cruiser and Mercedes policies, the statute required Farmers to give her underinsured motorist coverage because she did not sign an express waiver of that coverage. The contention is without merit because the underinsured motorist statute does not extend to coverage of a person in Kristina's circumstances.

"The fundamental task of statutory construction is to 'ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute.' [Citation.]" (*People v. Cruz* (1996) 13 Cal.4th 764, 774-775.) "When looking to the words of the statute, a court gives the language its usual, ordinary meaning. [Citation.]" (*People v. Snook* (1997) 16 Cal.4th 1210, 1215.) "When the language of a statute is clear, we need go no further." (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.)

Section 11580.2, subdivision (a)(1) contains the Legislature's requirement that automobile insurance policies include underinsured motorist coverage. It states, in relevant part: "No policy of bodily injury liability insurance covering liability . . . shall be issued . . . unless the policy contains . . . a provision . . . insuring the insured . . . for all sums within the limits that he, she, or they, as the case may be, shall be legally entitled to

4

recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle."[2]

Therefore, the statute requires insurers to include a provision in automobile insurance policies covering the "insured" for the liability of an underinsured motorist. If a person is the "insured," the only way for the insurer to exclude coverage for the liability of an underinsured motorist is by written agreement excluding that coverage. (§ 11580.2, subd. (a)(1).) If, on the other hand, a person is not the "insured," then there is no underinsured motorist coverage under the statute, and no written agreement excluding that coverage is necessary because what is not included in the first place need not be excluded. The latter is the case here because Kristina was not the "insured" for the purpose of applying this statute.

Section 11580.2, subdivision (b) defines the "insured," for the purpose of applying the statute, as "[1] the named insured [here, Felix] and [2] the spouse of the named insured and [3], while residents of the same household, relatives of either while occupants of a motor vehicle or otherwise, [4] heirs and any other person while in or upon or entering into or alighting from an insured motor vehicle and [5] any person with respect to damages he or she is entitled to recover for care or loss of services because of bodily injury to which the policy provisions or endorsement apply . . . ."

Under section 11580.2, subdivision (b), the following people were the "insured" under Felix's policies: (1) Felix, who was the named insured, (2) Felix's spouse, (3) relatives living in Felix's household, (4) others engaged in activities with the covered

---

**2** For the purpose of our analysis, there is no difference between uninsured and underinsured coverage. (§ 11580.2, subds. (b) & (p).) Also for the purpose of our analysis, we may assume that the PT Cruiser and Mercedes policies covered Kristina for her own liability in driving the covered automobiles.

automobile, and (5) loss of consortium claimants for injuries to people in the other categories.

Kristina did not fit within any of these statutory categories at the time of her death. She was neither the named insured nor the spouse of the named insured. Although she was the daughter of the named insured, she did not live in the same household. And she was a pedestrian at the time of the accident, so she was not engaged in an activity related to one of the covered vehicles.

Since Kristina did not fit into the statutory definition of the "insured," for the purpose of applying section 11580.2, Farmers was under no statutory obligation to provide her coverage under these circumstances for the liability of underinsured motorists. And since there was no obligation to give her that coverage, there was no reason for Farmers to obtain a written agreement excluding her from such coverage.

We note that section 11580.06, subdivision (b) contains a different definition of "insured." However, that definition applies "[e]xcept as may be otherwise provided in this article" (§ 11580.06), and the definition of "insured" in section 11580.2, subdivision (b) specifically applies to the term "[a]s used in subdivision (a)," which provides for underinsured motorist coverage. Therefore, the definition in section 11580.2, subdivision (b) is the definition applicable to this case.

We therefore conclude that plaintiffs' statutory argument is without merit.

II

*Alleged Policy Ambiguity*

Plaintiffs contend that Farmers's use of the term "insured person" in "PART I – LIABILITY" and "PART II – UNINSURED MOTORIST" of the PT Cruiser and Mercedes policies with two separate definitions created an ambiguity that must be construed against Farmers. We do not find the language to be ambiguous. Similar to the statutory scheme, the policies defined the "insured person" differently for different purposes but those different definitions and purposes were clear and unambiguous.

6

A.     *Law Governing Review of Insurance Policies*

"Where a case turns on the interpretation of an insurance policy, the court reviews the policy's terms under the ordinary rules of contract interpretation.  (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264.)  If the policy language is clear and explicit, it governs.  (*Ibid.*)  If the policy terms are ambiguous or uncertain, the court must attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations.  (*Id*. at p. 1265.)  If this rule does not resolve the ambiguity, it must be resolved against the insurer.  (*Ibid.*)

"In determining whether an ambiguity exists, the words of the policy must be interpreted according to the plain meaning that a layperson would ordinarily attach to them.  (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 807.)  Policy language is ambiguous when it reasonably may be interpreted in two or more ways.  (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.)  'Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.'  (*Reserve Insurance Co. v. Pisciotta*, at p. 807.)  Moreover, the language must be interpreted in the context of the policy as a whole, and in light of the circumstances of the case.  It cannot be deemed to be ambiguous in the abstract. (*Bank of the West v. Superior Court, supra*, 2 Cal.4th at p. 1265.)"  (*Mercury Ins. Co. v. Pearson* (2008) 169 Cal.App.4th 1064, 1070, italics omitted; see also *Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 321.)

B.     *Relevant Policy Provisions*

Part I of each automobile policy was titled, "LIABILITY," while part II was titled, "UNINSURED MOTORIST."  Each part had its own definition of "insured person." Both definitions included the named insured and relatives living in the same household. But the part I definition also included "[a]ny person using your insured car," a provision not found in the part II definition.  On the other hand, the part II definition included "[a]ny other person while occupying your insured car," which was not included in the

7

part I definition. Neither definition of "insured person" in the main text of the policies – that is, not considering the endorsements – included Kristina, except when she was driving or occupying the insured car.

An amendment to the PT Cruiser policy changed the definition of "insured person" in PART I – LIABILITY to include Kristina. The evidence showed that she was a listed or rated driver on that policy. Endorsement 1042A to that policy stated that it amended PART I – LIABILITY and it expressly added to the definition of "insured person" any "listed driver." It continued: "Listed Driver means a driver expressly rated on this policy to operate your insured car and for whom a premium has been paid to operate your insured car." In at least three places, Endorsement 1042A stated that it applied to PART I – LIABILITY, at one point stating that the definition was to be "Used In This Part Only." There was no mention of PART II – UNINSURED MOTORISTS in Endorsement 1042A, and there was no similar endorsement to the policy modifying the definition of "insured person" as it related to PART II – UNINSURED MOTORISTS.

C.     *Analysis*

Plaintiffs argue that, "[b]y using two definitions of insured person, Defendant Farmers has created an ambiguity. It is reasonable to assume that the insured person definition in the endorsement has modified both the liability portion and uninsured portion of the policy." To the contrary, the express terms of the policies provided distinct definitions of "insured person" for each of the two relevant parts of the policy. It cannot be argued that the definition of "insured person" found in PART I – LIABILITY of the policies applied to the provisions of PART II – UNINSURED MOTORISTS without ignoring the express policy language. (See *Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 18 [policy ambiguous only when both interpretations are reasonable].)

With this express policy language in mind, we must conclude that Kristina was covered as a "listed driver," and therefore an "insured person," under PART I – LIABILITY of the PT Cruiser policy, but that the definition of "insured person" under

8

PART II – UNINSURED MOTORISTS remained unchanged and did not include Kristina unless she was occupying the insured car. When she was hit and killed by Duril's car, Kristina was a pedestrian, not an occupant of the insured car. Under the express terms of the policies, Kristina was not entitled to underinsured motorist coverage for the accident.

### III

### *Reasonable Expectations*

Plaintiffs make one last attempt to qualify for the underinsured motorist coverage of Felix's PT Cruiser and Mercedes policies, as well as his umbrella policy coverage. They contend that extrinsic evidence established that the reasonable expectations of Felix and Kristina were that Kristina was covered for the liability of an underinsured motorist while she was a pedestrian because (1) Kristina paid an additional premium to be insured under Felix's PT Cruiser and Mercedes policies, (2) Felix intended that Kristina be covered under the PT Cruiser and Mercedes policies, (3) a print-out from a Farmers computer screen and a summary of Felix's policies showed Kristina as a rated driver on the PT Cruiser policy, and (4) after the accident a Farmers employee expressed the opinion that Felix's policies would cover the accident. But plaintiffs' contention fails because it does not justify diverging from the language of the policies.

A.    *Law Concerning Reasonable Expectations*

"The principles governing the interpretation of insurance policies in California are well settled. 'Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions. [Citations.] "If contractual language is clear and explicit, it governs." [Citations.] If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], we interpret them to protect " 'the objectively reasonable expectations of the insured.' " [Citations.] Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be

9

resolved against the insurer.  [Citation.]'  [Citation.]"  (*Minkler v. Safeco Ins. Co. of America, supra,* 49 Cal.4th at p. 321.)

B.     *Relevant Facts*

Todd Berendes stated in a declaration that Kristina paid an additional premium to be a listed or rated driver on Felix's PT Cruiser and Mercedes policies and Felix (who passed away after Kristina but before these proceedings) intended that Kristina be insured under his PT Cruiser and Mercedes policies.  After the accident, Todd contacted Beverly Dillard, a Farmers employee, regarding coverage under Felix's policies.  Dillard gave Todd a copy of a computer screen printout and an "e-Auto" policy summary, both showing that Kristina was a rated driver under Felix's PT Cruiser policy.  Dillard expressed her opinion to Todd that, in Todd's words, "she believed Kristina was a covered insured under [Felix's PT Cruiser and Mercedes] policies and the umbrella policy."

C.     *Analysis*

Plaintiffs argue that these facts created a reasonable expectation that Kristina was covered for this accident by Felix's policies, or at least provided evidence that such an expectation was reasonable.  The argument is unpersuasive for three reasons.  First, the policy language was clear and unambiguous.  Therefore, that language governs the coverage dispute.  (*Minkler v. Safeco Ins. Co. of America, supra,* 49 Cal.4th at p. 321.)  Second, the facts presented by plaintiffs, except for Dillard's opinion, are consistent with the result that Kristina was covered for her own liability as a driver of an insured car and even for the liability of an underinsured motorist if Kristina was injured while an occupant of an insured car but not for the liability of an underinsured motorist if Kristina was injured while she was a pedestrian.  Third and finally, Dillard's mistaken belief, after the accident, that Kristina was insured for the accident (1) could not cause Felix or Kristina, before the accident, to reasonably expect that Kristina was covered and (2) could not cause an amendment to the policies to provide that coverage.  Furthermore,

10

there is no evidence that Dillard looked at the actual policies, as opposed to a summary, before expressing her opinion.

Accordingly, the trial court properly granted summary judgment to Farmers because the policies in question did not provide underinsured motorist coverage to Kristina as a pedestrian.

DISPOSITION

The judgment is affirmed.  Farmers shall recover its cost on appeal.  (Cal. Rules of Court, rule 8.278(a).)


      NICHOLSON    , J.


We concur:


      RAYE     , P. J.


      HULL     , J.