Filed 5/11/26  Marriage of Stommel CA3

<u>NOT TO BE PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| In re the Marriage of CRISTIAN CRISSY and DONALD STOMMEL. | C103664 |
| CRISTIAN CRISSY STOMMEL,<br>        Respondent,<br><br>        v.<br><br>DONALD STOMMEL,<br>        Appellant. | (Super. Ct. No. 07FL00495) |

In this family law matter, Donald Stommel challenges three postjudgment orders, including the order denying his request to modify the stipulated marital dissolution judgment, which resolved the protracted and contentious divorce proceedings between himself and his former spouse, Cristian Crissy Stommel.[1]  Donald argues the family court erred in denying his motion to modify the provision of the stipulated judgment that obligated him to continue to maintain a life insurance policy with a benefit paying at least $150,000 to Cristian as "irrevocable beneficiary."  According to Donald, the family court applied the wrong legal standard and misinterpreted the stipulated judgment, which, in

---

[1]  Because the parties shared the same last name during the proceedings below, we refer to them by their first name after the first reference to avoid confusion.

1

his view, required the court to remove (or eliminate) his life insurance obligation once his spousal support obligations were satisfied. In a related argument, Donald claims the family court erred in denying his motion for reconsideration of the order denying his motion to modify the stipulated judgment. Finally, Donald argues the family court erred in awarding Cristian $1,500 in attorney fees as a sanction under Family Code section 271,[2] which was based on Donald's failure to produce the life insurance policy to Cristian in connection with his motion to modify the stipulated judgment. Finding no basis for reversal, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Marriage*

Donald and Cristian married in 1998 and separated in 2008. During their marriage, Cristian was a stay-at-home mother while Donald developed and ran a successful business, D&T Fiberglass, Inc. The couple had two children together, and Donald adopted Cristian's daughter from a previous relationship.

*Marital Settlement Agreement and Stipulated Judgment*

Around three and a half years after separation, in February 2012, Donald and Cristian executed a marital settlement agreement, which formalized various agreements made at a settlement conference to resolve their long-running and contentious divorce (or marriage dissolution) proceedings. The family court entered a stipulated marital dissolution judgment later that same month, which incorporated the terms of the marital settlement agreement. Among other things, the stipulated judgment required Donald to pay Cristian $4,200 in monthly child support until the occurrence of certain events,[3] and $6,000 in

---

[2] Undesignated statutory references are to the Family Code.

[3] At the time of the stipulated judgment, the parties' children were seven and 12 years old. Under the terms of the stipulated judgment, Donald's obligation to pay child support

2

monthly spousal support for five years, ending when Cristian remarried or January 31, 2017 (whichever occurred first).[4] Donald also agreed to pay Cristian $170,000 to equalize the division of property, and to maintain a life insurance policy with a benefit paying at least $150,000 to Cristian as "irrevocable beneficiary."

The terms of the stipulated judgment were recited on the record in open court before judgment was entered. At no point prior to entry of judgment was there a discussion about the specific purpose of the life insurance provision, including any representation that it was meant to "secure" spousal support or that it was subject to termination (or elimination) once Donald satisfied his spousal support obligation to Cristian. In full, the life insurance provision, which was drafted by Donald's counsel, states:

"11. **Life Insurance:** [¶] [Donald] agrees to continue to maintain a life insurance policy on his life with a benefit paying at least $150,000.00 to [Cristian] as *irrevocable beneficiary*. [¶] [Donald] agrees that [Cristian] may seek periodic confirmation of the continued effectiveness of this provision and he shall cooperate in providing either a release to the insurance company to allow her direct access or he will cooperate and comply with her reasonable requests for confirmation that the policy remains in effect. [¶] The parties further agree that if [Cristian] wishes to obtain additional life insurance on [Donald's] life, she will do so at her own cost, if he is insurable. [Donald] shall cooperate with [Cristian's] request. [¶] The court shall have continued jurisdiction over this provision and it is modifiable." (Italics added.)

---

ended upon the occurrence of certain specified events (e.g., "[t]he children attain age 19, or have attained age 18 and are not full-time high school students residing with [Cristian]").

[4] For purposes of spousal support, Donald's monthly income was $31,000 while Cristian's imputed monthly income was $2,500. The stipulated judgment expressly provided that the amount of spousal support and the date this obligation ended (January 31, 2017) were "non-modifiable."

The last paragraph of the marital settlement agreement—Modification by Subsequent Agreement—states that it could "be modified by subsequent agreement of the parties *only* by an instrument in writing signed by both of them, an oral agreement to the extent that the parties execute it, or an in-court oral agreement made into an order by a court of competent jurisdiction." (Italics added.)

*Relevant Postjudgment Events*

In 2020, more than three years after Donald's obligation to pay spousal support to Cristian was satisfied, he remarried. In 2022, Donald's obligation to pay child support was satisfied.

At some point in 2023, Donald was diagnosed with cancer. In September 2023, Cristian sent the following text message to Donald: "Hope you die a slow death you deserve nothing less." Cristian also sent a similar message to Donald's sister via social media.

In spring and summer 2024, e-mails were exchanged between Cristian's counsel and Donald's counsel about the status of the life insurance policy. As part of this exchange, counsel disagreed as to whether Cristian was entitled to the benefits of the policy ($150,000) under the terms of the stipulated judgment.

*Motion to Modify the Stipulated Judgment*

In August 2024, Donald filed a motion to modify the stipulated judgment to remove (or eliminate) the obligation that he maintain a life insurance policy for the benefit of Cristian. In support of his motion, Donald stated: "At the time that we agreed to [the life insurance] provision, it was to secure spousal support. I am informed that this is a typical provision in dissolution actions. I am further under the belief and understanding that my obligation to name [Cristian] as beneficiary of life insurance ended when spousal support terminated." Donald further stated: "[Cristian] is actively wishing for my death and at the same time apparently asserting that there is a requirement for me to maintain her as a beneficiary on a life insurance policy. She is clearly looking for a windfall to which she

4

is not entitled. I have no doubt that if I did die before the court specifically makes an order relating to this issue, she would cause my current wife and other heirs tremendous headaches trying to gain something to which she has no legal right. Thus, because of [Cristian's] prior statements and refusal to acknowledge that the life insurance provision expired with the spousal support provision, I am compelled to seek an order of the court specifically stating that there is no obligation on my part to name [Cristian] as a beneficiary of any life insurance policy." Donald provided no explanation for why he did not seek to modify the stipulated judgment earlier, including when his spousal support obligations were satisfied in January 2017.

Cristian filed a written opposition, arguing that Donald failed to provide any factual or legal basis for the relief he sought. In support of her position, Cristian stated: "At the time I signed the [marital settlement agreement] it was my understanding that I was entitled to a $150,000.00 life insurance policy based on the plain language of the [agreement]. I have no recollection the life insurance policy was to ensure spousal support only and there is no language in the [agreement] that reflects that the life insurance policy was to ensure spousal support."

In October 2024, the family court scheduled the matter for a one-day bench trial in January 2025. In so doing, the court made clear that it needed more information to decide Donald's motion, including "what type of life insurance policy [was] at issue (term or whole), the cost, if any of the life insurance policy, when it expire[d] or [was] paid in full, the cost of any continuing premium, and whether there were assets that [Cristian] forfeited in light of the life insurance provision."

*Bench Trial*

In December 2024, the parties each submitted a written statement specifying the issues to be decided in connection with the bench trial and their respective positions on those issues. It was not disputed that the primary issue before the family court was whether Donald's obligation to maintain a life insurance policy of at least $150,000 for the benefit of Cristian terminated (or was subject to removal/elimination) upon the satisfaction of his spousal support obligations.

In her pretrial filing, Cristian argued that the marital settlement agreement could not be modified, since it was a final judgment that had been entered many years earlier (February 2012). Cristian insisted that Donald had not offered any legal or factual basis to warrant modification of the stipulated judgment, and that the statute of limitations to make any such modification had passed. In a separate filing (trial brief and motions in limine), Cristian requested an evidentiary sanction and/or award of attorney fees as a sanction against Donald, which was based on his failure to provide her access to or information about the life insurance policy in violation of the terms of the stipulated judgment.

Donald, for his part, argued that the life insurance provision could be modified under the express terms of the stipulated judgment, and that elimination of the provision was warranted because it was intended to secure spousal support, which had ended almost eight years earlier (January 2017).

In January 2025, a one-day bench trial was held. Only two witnesses testified: Donald and Cristian. Upon questioning, Donald explained that he obtained a universal life insurance policy[5] in 2002 and had maintained that policy (which was paid for by his

---

[5] Universal life insurance is a type of permanent life insurance; it is designed to last for the insured's entire lifetime. By contrast, a term life insurance plan lasts for a set period of time (e.g., 10, 20, or 30 years).

company) for the benefit of Cristian since the stipulated judgment was entered in February 2012. Donald acknowledged that he failed to provide Cristian a copy of the life insurance policy in response to a discovery request, explaining that he did not have a copy of the policy at his home, and he did not ask his insurance agent for a copy. Donald also acknowledged that the terms of the stipulated judgment did not explicitly state that his obligation to maintain life insurance for the benefit of Cristian was contingent upon his obligation to pay spousal support or that the life insurance provision was subject to modification or termination upon the satisfaction of his spousal support obligations. Nevertheless, Donald insisted that the life insurance provision was terminable because the life insurance policy was meant to be "collateral until the spousal support was over." Donald explained that, in his view, the purpose of the life insurance provision was to "guarantee" spousal support in the event he died before his spousal support obligations were satisfied, and that he was currently asking the family court to "eliminate" the life insurance provision because spousal support ended years earlier.[6]

When Cristian testified, she claimed that the life insurance provision was part of the "property judgment," and that the stipulated judgment would not have been fair to her if she was not designated as the beneficiary of the life insurance policy. In support of her position, Cristian explained that she agreed to the life insurance provision and to a $170,000 payment to equalize the division of property in exchange for giving up her interest in significant community assets (e.g., marital home, cabin, Corvette, boat, RV). Cristian also testified that everything she stated in her pretrial declaration was true,

---

[6] Under the terms of the stipulated judgment, Donald was required to pay Cristian $6,000 per month for five years, resulting in a total spousal support obligation of $360,000. Thus, the $150,000 life insurance policy represented less than half (approximately 42 percent) of the amount Donald was obligated to pay in spousal support.

including her assertion that all of the assets related to Donald's business, including retirement benefits, were awarded to him as his separate property.

At the time of the bench trial, Donald was 68 years old and Cristian was 58 years old.

*Family Court's Ruling*

At the conclusion of trial, the family court orally denied Donald's motion to modify the stipulated judgment. In so ruling, the court explained that there was nothing in the text of the stipulated judgment providing that Donald did not have to maintain a life insurance policy for the benefit of Cristian after his spousal support obligations were satisfied. In the court's view, had the parties intended for this result, they would have included language in the agreement saying as much. The court went on to find that the "disparaging things" Cristian had said about Donald related to his death were not a proper basis to modify the stipulated judgment.[7]

In its written order denying Donald's motion to modify the stipulated judgment, the family court stated as follows:

"[Donald's] principal argument for modification is that the parties agreed as part of the stipulated agreement that the life insurance obligation should terminate once [Donald] satisfied his support obligations. [Donald] testified that that was what he had always understood, but conceded that there is no language in the stipulated agreement that reflects this alleged agreement or that in any way specifically ties the continuing life insurance obligation to whether [Donald's] spousal support obligation is in effect. The Court finds no support for [Donald's] interpretation in the stipulated agreement's terms,

---

[7] The family court also found that sanctions against Donald in the amount of $1,500 were warranted under section 271 because he failed to provide Cristian a copy of the life insurance policy prior to trial. However, the court (as stated in its subsequent written order denying the motion to modify the stipulated judgment) decided to give Donald notice and an opportunity to be heard on the matter and scheduled a hearing.

8

which 'contain[] the entire agreement of the parties' with respect to the life insurance obligation.

"[Donald] further asks the Court to end his obligation to continue the life insurance policy because [Cristian] said disparaging or otherwise 'nasty' things to [him], including that she hoped he die a slow death. [Cristian] acknowledges she sent 'mean' text messages to [Donald] and that they do not reflect her 'finest moment.' The Court does not find that [Cristian's] messages to, or ill will towards, [Donald] justify modifying the [stipulated] judgment.

"[Donald] has made no argument that the life insurance provision imposes an unreasonable financial burden on him. He also testified that his company paid for the life insurance policy."

*Motion for Reconsideration*

In April 2025, after a hearing, the family court issued a written order denying Donald's motion for reconsideration of the order denying his motion to modify the stipulated judgment. As discussed more fully below, the court found the motion was procedurally defective because it was not based on any new or different facts that Donald could not have discovered with reasonable diligence prior to trial.

*Sanctions*

In April 2025, after a hearing, the family court issued a written order awarding Cristian $1,500 in attorney fees as a sanction under section 271, which was based on Donald's failure to provide Cristian a copy of the life insurance policy in response to a pretrial discovery request.

Donald filed a timely notice of appeal.

### DISCUSSION

#### I. *Motion to Modify the Stipulated Judgment*

Donald first argues the family court erred in denying his motion to modify the life insurance provision in the stipulated judgment. According to Donald, his obligation to

maintain life insurance for the benefit of Cristian was subject to termination "upon the cessation" of spousal support in 2017, either because the provision was "implicitly grounded in and 'concerned' support," or because he had "shown a change of circumstances" (e.g., new marriage). In Donald's view, the family court erroneously concluded that termination of the life insurance provision was not warranted because there was no explicit language in the stipulated judgment supporting such relief.

A.  Relevant Legal Principles and Standard of Review

California courts generally must divide the community estate of parties to a dissolution proceeding equally. (§ 2550.) The parties, however, " 'can agree on a lopsided division of community property, but only if it is evidenced (1) by a written agreement of the parties; or (2) by an oral stipulation of the parties in open court.' " (*In re Marriage of Woolsey* (2013) 220 Cal.App.4th 881, 897; see also *Mejia v. Reed* (2003) 31 Cal.4th 657, 666 [although a family court is generally obliged to divide the community estate of the parties equally, no law requires the parties to do so, "and the court does not scrutinize the [marital settlement agreement] to ensure that it sets out an equal division"].)  " ' "[P]roperty settlement agreements occupy a favored position in the law of this state. . . ." [Citation.]  Courts are reluctant to disturb them "except for equitable considerations.  A property settlement agreement, therefore, that is not tainted by fraud or compulsion or is not in violation of the confidential relationship of the parties is valid and binding on the court." ' "  (*Woolsey*, at pp. 897-898.)

"Marital settlement agreements incorporated into a dissolution judgment are interpreted under the same rules governing contract interpretation generally." (*In re Marriage of T.C. & D.C.* (2018) 30 Cal.App.5th 419, 424.) "The primary object of contract interpretation is to ascertain and carry out the mutual intention of the parties at the time the contract was formed, determined from the writing alone, if possible." (*In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 688.) " 'Thus, "a 'court's paramount consideration . . . is the parties' objective intent when they entered into [the contract].' " ' " (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 437-438.)

" 'The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' [Citation.] This means that '[c]ourts must interpret contractual language in a manner which gives force and effect to every provision' [citation], and avoid constructions which would render any of its provisions or words 'surplusage.' [Citation.] Put simply, '[a] contract term should not be construed to render some of its provisions meaningless or irrelevant.' " (*In re Marriage of Nassimi*, *supra*, 3 Cal.App.5th at p. 688.)

The words used in a contract generally are to be understood in their ordinary and popular sense. (*Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc*. (1999) 74 Cal.App.4th 1232, 1240.) "When the language of the judgment incorporating the marital settlement agreement is clear, explicit, and unequivocal, and there is no ambiguity, the court will enforce the express language." (*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1440.) The court will not adopt a strained or absurd interpretation to create an ambiguity where none exists. (*Berendes v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 571, 577-578.)

" ' " '[I]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' [Citations.]" [Citation.] "The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent,

11

including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties." ' " (*In re Marriage of Hibbard* (2013) 212 Cal.App.4th 1007, 1013.)  " 'The parties' expressed objective intent, not their unexpressed subjective intent, governs.' " (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 948 (*Minkin*).)

Extrinsic evidence may be admissible to prove the parties' intent if a contract term is ambiguous or susceptible to more than one reasonable interpretation.  (*In re Marriage of Iberti, supra,* 55 Cal.App.4th at p. 1439.)  However, such evidence is "inadmissible to vary, alter, or add to the terms of an unambiguous agreement." (*Id.* at p. 1440.)  " 'Our function is to determine what, in terms and substance, is contained in the contract, not to insert what has been omitted.  We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there.' " (*Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Insurance Exchange* (2014) 229 Cal.App.4th 549, 569.)

" 'If [a stipulated judgment] is ambiguous, the . . . court may examine the record for its scope and effect and may look at the circumstances of its making.'  [Citation.] Indeed, '[e]xtrinsic evidence is admissible to prove a meaning to which the contract is reasonably susceptible.  [Citations.]  If the trial court decides, after receiving the extrinsic evidence, the language of the contract is reasonably susceptible to the interpretation urged, the evidence is admitted to aid in interpreting the contract.' "  " 'The threshold issue of whether to admit the extrinsic evidence—that is, whether the contract is reasonably susceptible to the interpretation urged—is a question of law subject to de novo review.' " (*Minkin*, *supra*, 11 Cal.App.5th at p. 948.)

" 'The ultimate construction placed on the contract might call for different standards of review.  When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the

contract. [Citations.] When the competent extrinsic evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction will be upheld if it is supported by substantial evidence.' " (*Minkin, supra,* 11 Cal.App.5th at p. 948.)

### B. Analysis

As an initial matter, we conclude the challenged order is subject to the independent standard of review. While extrinsic evidence was introduced during the bench trial, the family court did not admit (or rely upon) that evidence in denying Donald's motion to modify the stipulated judgment.

Applying the independent standard of review, we see no error. The marital settlement agreement was designed to settle and dispose of the parties' property rights and to provide support for Cristian and the parties' two minor children. The life insurance policy at issue, which was taken out during the marriage, was community property and subject to division under the agreement between the parties.[8] But it was not awarded to either party under the provisions of the agreement dividing the community assets. Instead, the parties agreed to a separate life insurance provision, which appears in the agreement immediately following the spousal support provision. Of relevance here, the life insurance provision obligated Donald "to continue to maintain a life insurance policy on his life with a benefit paying at least $150,000 to [Cristian] as *irrevocable*

---

[8] "Both spouses ordinarily have a community interest in the proceeds of an insurance policy to the extent it was acquired with community funds." (*In re Marriage of O'Connell* (1992) 8 Cal.App.4th 565, 577; see *In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1400 [life insurance policy purchased during marriage with community funds is community property]; *Life Insurance Co. of North America v. Cassidy* (1984) 35 Cal.3d 599, 605 ["When life insurance premiums are paid with community property funds, the resulting policy is an asset of the community"].) It is not disputed that the life insurance policy at issue here was acquired with community funds and that Donald paid the insurance premiums with community funds prior to separation.

13

*beneficiary*," and specifically stated that the family court "shall have continued jurisdiction over this provision and it is modifiable."

The question we must decide is whether the obligation imposed on Donald to maintain life insurance for the benefit of Cristian was terminable upon the satisfaction of his spousal support obligations. As the family court correctly observed, there is no explicit language in the life insurance provision supporting such an interpretation. The plain text does not specifically state or suggest that Donald's life insurance obligation was connected to (or contingent upon) his obligation to pay spousal support. And, unlike the spousal support obligation, there was no agreement that the life insurance obligation would end on the occurrence of a certain event or on a specified date, such as the date the spousal support obligation ended (January 31, 2017).

On this record, the trial court properly determined that the express language of the life insurance provision controls, as it is clear, explicit, and unequivocal. While the provision expressly states that it is "modifiable," it does not state that termination of the provision is required (or mandated) upon Donald's satisfaction of his spousal support obligations to Cristian.[9] Had the parties intended that result, they could have easily said so. Instead, the parties agreed that Donald must continue to maintain a life insurance policy for the benefit of Cristian as an *irrevocable beneficiary*, without any temporal or other limitation on this obligation.

---

[9] We recognize that spousal support *may* encompass "maintenance of life insurance on the supporting spouse's life." (*In re Marriage of Stimel* (1996) 49 Cal.App.4th 991, 995.) We also recognize that marital settlement agreements can include language requiring a spouse to secure life insurance for another spouse's benefit as security for spousal support. (See, e.g., *In re Marriage of Siegel* (2015) 239 Cal.App.4th 944, 947-948.) But, as we explain, this is not what happened here.

The parties' decision to designate Cristian as an "irrevocable beneficiary" supports the conclusion that their mutual intention at the time of execution was that any modification of the life insurance provision would require Cristian's consent. (See *In re Marriage of O'Connell, supra,* 8 Cal.App.4th at p. 577 [an insured can waive any right to change beneficiaries by making an irrevocable beneficiary designation].) In other words, the parties agreed that Donald could not unilaterally change the beneficiary of the life insurance policy or terminate the life insurance provision without Cristian's approval. (See *ibid*. [an irrevocably designated beneficiary obtains a vested contractual right to recover insurance proceeds].) This conclusion is consistent with the absence of any express language to the contrary and the text of the stipulated judgment, including the last paragraph of the marital settlement agreement. That provision—"Modification by Subsequent Agreement"—provides that the agreement could "be modified by subsequent agreement of the parties *only* by an instrument in writing signed by both of them, an oral agreement to the extent that the parties execute it, or an in-court oral agreement made into an order by a court of competent jurisdiction." While the marital settlement agreement does not explicitly state that this is the only way to modify the agreement, it is clear to us that the parties contemplated that modification (at least as a general matter) required the consent of both parties.

Although not cited by either party, we find the circumstances of this case analogous to those presented in *Wright v. Wright* (1969) 276 Cal.App.2d 56. In that case, the property settlement agreement required husband to "keep in force" (i.e., maintain) two life insurance policies in the amount of $10,000, one that designated his two children as beneficiaries and another which designated his first wife as beneficiary. (*Id*. at p. 57.) Under the terms of the agreement, husband was required to " 'pay all premiums on said policies prior to delinquency' " and was prohibited from making any change in the beneficiary under the respective policies. (*Ibid*.) Before his death, husband "cashed out one policy and surrendered the other for cancellation." (*Ibid*.) After husband died, his

15

first wife and one of his children sued to recover the life insurance proceeds from husband's estate, relying on the life insurance provision in the property settlement agreement. (*Ibid*.) They argued that the intention of husband and first wife was to provide an "insurance estate of $10,000" for the first wife and their children upon husband's death. (*Id*. at p. 58.) The executrix of husband's will (second wife) disagreed, arguing that husband's "life insurance obligations were intended merely to secure his support obligations under the agreement to [first wife] and their children and terminated when those obligations did." (*Ibid*.) In rejecting the trial court's determination that husband's life insurance obligations were only intended to last a reasonable time (i.e., the periods of time in which the children were minors), the appellate court relied on the text of the life insurance provision, which, unlike the separate support provisions, contained no limitation on the duration of his life insurance obligations. (*Id*. at pp. 58-59.) Based on the text of the life insurance provision, the appellate court concluded that husband's life insurance obligations "lasted until his death." (*Id*. at p. 61.)

To the extent Donald urges us to adopt a different interpretation of the life insurance provision, we decline to do so as it would be contrary to the parties' objective mutual intent, as expressed in the plain language of the provision. Indeed, we cannot (and do not) adopt Donald's interpretation of the provision, as it would require us to insert language (or add a term) not agreed upon by the parties, which would substantially alter the parties' agreement. (See Code Civ. Proc., § 1858 [in construing a written agreement, "the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted"]; *Jones v. World Life Research Institute* (1976) 60 Cal.App.3d 836, 840 [in the context of a stipulated judgment, it is not the province of the court to add to the provisions thereof; to insert a term not found therein; or to make a new stipulation for the parties].)

16

We deem forfeited the arguments Donald raises for the first time on appeal, including his contention that the family court should have eliminated his life insurance obligation because he showed a "significant change of circumstances" (e.g., child support payments had ended, he had remarried, he was "largely retired," he was unable to obtain life insurance policy for benefit of new wife due to age and health conditions). (*DiCola v. White Brothers Performance Products, Inc*. (2008) 158 Cal.App.4th 666, 676.) Forfeiture aside, Donald has failed to carry his burden to establish reversible error on this basis.

## II.  *Motion for Reconsideration*

Next, Donald argues the family court erred in denying his motion for reconsideration of the order denying his motion to modify the stipulated judgment.

### A.  Additional Background

As previously indicated, in April 2025, the family court denied Donald's motion for reconsideration of the order denying his motion to modify the stipulated judgment. The court found the motion was procedurally defective because it was not based on any new or different facts.  In so ruling, the court rejected Donald's contention that new or different facts existed because he had only recently learned from his insurance agent that he could not obtain any life insurance for his current wife given his age (68 years old) and health conditions.  In rejecting this argument, the court explained, in relevant part, as follows:

"[Donald] claims that, after the Court rejected his position at trial that the parties had previously agreed that the life insurance policy obligation should terminate once [Donald] satisfied his spousal support obligations, he learned from his insurance agent that he cannot purchase a new life insurance policy with benefits of $150,000 for his current wife.  He argues that only by terminating the current life insurance policy for [Cristian] can he ensure a life insurance policy with benefits of $150,000 for his current wife.  At the same time, he does not argue that, absent a life insurance policy with

17

benefits of at least $150,000, his current wife will not be adequately supported financially if he were to die. Nor does he otherwise argue that his current wife has any financial need for a life insurance policy with benefits of at least $150,000. He says that is not relevant at all."

"The Court denies [Donald's] motion for reconsideration. The Court finds that [Donald] could have, with reasonable diligence, discovered the new alleged facts for the parties' trial. According to [Donald], only because the Court rejected his position at trial was he sufficiently motivated to learn more about the life insurance policy at issue and options for purchasing a new life insurance policy with his current wife as beneficiary. In other words, he was so confident that the Court would allow him to terminate the life insurance policy in connection with [Cristian] that he simply had no reason to look into whether he could obtain a life insurance policy with benefits of $150,000 for his current wife until the Court unexpectedly decided against him. Once the Court did decide against him, he happened to discover within fewer than 10 days a new reason to urge the Court to terminate the life insurance obligation as to [Cristian]. This is not a satisfactory explanation for [Donald's] failure to produce the new alleged facts for the 1/23/2025 trial, which itself took place approximately 5 1/2 months after [Donald] filed his request to modify the 2/29/2012 judgment."

### B. Relevant Legal Principles

"When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order." (Code Civ. Proc., § 1008, subd. (a).)

"[A] party seeking reconsideration of a prior ruling upon an alleged different set of facts must 'provide both newly discovered evidence and an explanation for the failure to

18

have produced such evidence earlier.' " (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1168.)  The moving party's burden "is comparable to that of a party seeking a new trial on the ground of newly discovered evidence: the information must be such that the moving party could not, with reasonable diligence, have discovered or produced it at the trial." (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212-213.) Trial courts have no power to grant reconsideration based "on evidence that could and should have been, but was not, presented to the court in connection with the original motion." (*In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1314; see *In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1468 ["facts of which the party seeking reconsideration was aware at the time of the original ruling are not 'new or different' "].)

"A trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard." (*New York Times Co. v. Superior Court, supra,* 135 Cal.App.4th at p. 212.)

### C.  Analysis

The family court did not abuse its discretion in denying Donald's motion for reconsideration.  The facts Donald pointed to were not "new" or "different" within the meaning of Code of Civil Procedure section 1008.  The family court reasonably determined that Donald did not provide a satisfactory explanation for his failure to discover the information earlier and present it at trial.  Indeed, the alleged new or different facts—Donald could not obtain a life insurance policy for his current wife given his age (68 years old) and health conditions—were available prior to trial and could have been obtained from Donald's insurance agent, as Donald conceded at trial.  In short, Donald did not make the requisite showing to justify the relief sought.  As a result, the family court properly denied his motion for reconsideration.

### III.  *Sanctions*

Finally, Donald argues the family court erred in ordering him to pay Cristian $1,500 in attorney fees as a sanction under section 271.

19

A.  Additional Background

As previously indicated, in April 2025, the family court awarded Cristian $1,500 in attorney fees as a sanction under section 271, which was based on Donald's failure to produce the life insurance policy in connection with his motion to modify the stipulated judgment.  In finding that sanctions were warranted, the court explained that Donald had prevented Cristian from obtaining relevant information by failing to provide her a copy of the life insurance policy in response to a discovery request, thereby frustrating the policy of law to promote settlement of litigation and reduce the cost of litigation by encouraging cooperation between the parties and attorneys.  The court rejected the various arguments proffered by Donald for a different result, including (among other things) his claim that the amount of sanctions imposed was not "tethered" to any specific fees incurred by Cristian.  In so ruling, the court explained that $1,500 was an appropriate sanction given that the parties participated in a mandatory settlement conference and a two-hour bench trial in connection with Donald's motion to modify the stipulated judgment.

B.  Relevant Legal Principles and Standard of Review

A fundamental aspect of family law practice is to reduce acrimony and adversarial approaches common to general civil litigation and, instead, to foster cooperation between the parties and their counsel with a view toward settlement short of full-blown litigation. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1534.)

Section 271 provides a mechanism for family courts to sanction parties who fail to comply with this aspect of family law practice.  Subdivision (a) of section 271 states: "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which any conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.  An award of attorney's fees and costs pursuant to this section is in the nature of a sanction.  In making an award pursuant to this section, the court shall take into

20

consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award."

"[S]ection 271 . . . imposes a 'minimum level of professionalism and cooperation,' to effect the policy favoring settlement of family law litigation—and a reduction of the attendant costs. [Citations.] Section 271 ' "authorizes sanctions to advance the policy of promoting settlement of litigation and encouraging cooperation of the litigants' and "does not require any actual injury." [Citation.] Litigants who flout that policy by engaging in conduct that increases litigation costs are subject to imposition of attorney fees and costs as a section 271 sanction.' " (*In re Marriage of Davenport, supra*, 194 Cal.App.4th at p. 1524; see *Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1152 (*Sagonowsky*) [the purpose of section 271 is " ' " 'to promote settlement and to encourage cooperation which will reduce the cost of litigation' " ' "]; *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 990, 994 (*Falcone & Fyke*) [a sanctions award under section 271 need not be limited to the cost to the other side resulting from the bad conduct; it does not require a correlation between the sanctioned conduct and specific attorney fees]; see *id*. at pp. 990-991 [explaining that the sanction "simply authorizes a penalty for obstreperous conduct"].)

" 'The imposition of sanctions under section 271 is committed to the sound discretion of the trial court. The trial court's order will be upheld on appeal unless the reviewing court, "considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order." ' " (*Sagonowsky, supra*, 6 Cal.App.5th at p. 1152.) " ' "We review any findings of fact that formed the basis for the award of sanctions under a substantial evidence standard of review." ' " (*Falcone & Fyke, supra*, 203 Cal.App.4th at p. 995.)

21

C.  Analysis

The family court acted well within its discretion in deciding to award Cristian $1,500 in attorney fees as a sanction against Donald for his failure to produce the life insurance policy in connection with his motion to modify the stipulated judgment.  When the bench trial was scheduled, the court made clear that it needed more information to decide the matter, including " 'what type of life insurance policy [was] at issue (term or whole), the cost, if any of the life insurance policy, when it expire[d] or [was] paid in full, the cost of any continuing premium, and whether there were assets that [Cristian] forfeited in light of the life insurance provision.' "  Thereafter, Cristian propounded discovery to Donald seeking a copy of the life insurance policy.  Donald, however, never produced the policy.  At trial, Donald explained that he did not have a copy of the policy at his home, and he did not ask his insurance agent for a copy.

Donald manifestly failed to establish an abuse of discretion.  On this record, we cannot conclude that no reasonable judge could have made the challenged order.  The family court reasonably concluded that Donald's act of nondisclosure frustrated the statutory policy to promote settlement and encourage cooperation among the parties to reduce the cost of litigation.  The record reflects that Donald failed to properly respond to a valid discovery request seeking production of the life insurance policy.  Donald did so after the family court specifically stated that it needed certain information about the policy to decide his motion to modify the stipulated judgment.  When asked at trial, Donald conceded that he made no reasonable effort to obtain a copy of the policy.  In refusing to produce the policy, Donald not only misused the discovery process but also violated the express terms of the stipulated judgment (life insurance provision), which required that he "cooperate and comply with [Cristian's] reasonable requests for confirmation that the policy remains in effect."  In short, Donald has not shown any abuse of discretion, including the family court's decision to award Cristian $1,500 in attorney fees as a sanction against him.

We reject Donald's contention that reversal is required because the family court did not have the authority to impose sanctions that were not "tethered" to the amount of attorney fees or costs incurred by Cristian. In making this argument, Donald insists that the sanctions order was improper because Cristian provided no evidence (e.g., billing statements, invoices) as to the specific amount of fees she incurred. This argument has no merit. As we have explained, section 271 "simply authorizes a penalty for obstreperous conduct." (*Falcone & Fyke, supra*, 203 Cal.App.4th at pp. 990-991.) The amount of sanctions imposed by the family court need not be limited to the cost to the other side resulting from the bad conduct. There is no requirement that there be a correlation between the sanctioned conduct and specific attorney fees. (*Id*. at pp. 990, 994.) Donald, for his part, has not demonstrated that the family court abused its discretion in finding that $1,500 in attorney fees was a proper sanction for his failure to properly respond to discovery.

Equally unavailing is Donald's contention that an award of sanctions under section 271 was improper because Cristian's counsel failed to meet and confer regarding "the alleged discovery abuse." There is no such requirement in the text of section 271, and Donald cites no case law holding that sanctions cannot be imposed under section 271 for misuse of the discovery process unless the party seeking such relief has first met and conferred regarding the discovery at issue.[10] As we have discussed, sanctions are proper under section 271 when a party engages in conduct that frustrates the policy of promoting settlement of family law litigation and encouraging cooperation of the litigants. (*Sagonowsky, supra*, 6 Cal.App.5th at p. 1152.) Under the circumstances presented here,

---

[10] In support of his position, Donald does not cite any authority involving sanctions under section 271. Instead, he points to several statutory provisions and civil cases pertaining to discovery sanctions under the Civil Discovery Act. Because Donald fails to provide any reasoned legal analysis demonstrating that this authority applies to the facts of this case, no further discussion of it is required.

23

the family court could have reasonably concluded that Donald's failure to produce the life insurance policy met that standard.

## DISPOSITION

The order denying the motion to modify the stipulated judgment and the related order denying the motion for reconsideration of that order are affirmed.  The order awarding sanctions under section 271 is also affirmed.  Cristian is entitled to recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


/s/ _____
WISEMAN, J.*

We concur:


/s/ _____
KRAUSE, Acting P. J.


/s/ _____
BOULWARE EURIE, J.

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.